Keating, J.
On August 10,1961 the late Earl Miller, a resident of Harrison, New York, embarked on a short business trip to Brunswick, Maine, where his brother resided and where they had mutual business interests. On August 12, 1961, while a passenger in a ear driven by his brother and owned by his sister-in-law, Mr. Miller was killed when the vehicle suddenly swerved off the road and crashed into a bridge railing.
Some three months after the accident, the decedent’s brother and sister-in-law, who had been Maine residents, returned to this State where they presently reside. Shortly thereafter, the decedent’s wife, as executrix of his estate, commenced this action for wrongful death against the defendants Robert and Barbara Miller, alleging that the accident occurred as a result of the negligent operation of the vehicle owned by Mrs. Miller.
As a partial defense to the wrongful death action, the defendants asserted the $20,000 limitation on recoveries in wrongful death actions in effect in Maine at the time of the decedent’s *15 death but since repealed (Maine Rev. S.tat. Ann., tit. 18, § 2552, as amd. by L. 1965, ch. 255).[1] The Supreme Court (Special Term) granted a motion by the plaintiff to dismiss the partial defense. The Appellate Division (2d Dept.) unanimously' affirmed and granted leave to appeal to this court.
The question presented by this appeal is whether the $20,000 limitation on recovery in wrongful death actions under Maine law should be applied in this action for the benefit of the resident wife and children of a New York decedent against New York resident defendants where the accident took place in Maine and the defendants resided there at the time of the accident.
In Babcock v. Jackson (12 N Y 2d 473 [1963]) this court rejected squarely and unequivocally the traditional choice-of-law rule which looked invariably to the law of the place of the tort. The difficulty which we found with this rule was that in giving controlling significance to the law of that jurisdiction in which the accident took place, without considering the purpose of the laws in conflict, the rule “ ignore [d] the interest which jurisdictions other than that where the tort occurred may have in the resolution of particular issues ” (supra, p. 478). We concluded that 1 ‘ Justice, fairness and ‘ the best practical result ’ * * * may best be achieved by giving controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation ” (supra, p. 481).
While this approach has been denominated under such various headings as ‘ ‘ grouping of contacts ’ ’ and ‘[1] center of gravity ’ and while candor requires the admission that our past decisions have lacked a precise consistency, the rule which has evolved clearly in our most recent decisions is that the law of the jurisdiction having the greatest interest in the litigation will be *16 applied and that the facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict.
Thus in Matter of Crichton (20 N Y 2d 124) a New York domiciliary died leaving a considerable fortune in stocks, bonds and savings accounts in Louisiana. The will of the decedent bequeathed all his property to his children and made no provision for his wife. Under Louisiana law the wife was entitled to one half the estate while under New York law she would be entitled to a third. In arguing the applicability of Louisiana law—which by its express terms applied to the property in question — it was argued, on behalf of the wife, that Louisiana had the more numerous contacts and the most significant relationship with the issue. Among the Louisiana contacts was the presence of the property in that jurisdiction, the fact that the property was purchased with proceeds from oil and mineral investments in Louisiana, and the fact that the great bulk of the decedent’s wealth was located in Louisiana. Against these numerous contacts with Louisiana the sole New York contact was the residence of the decedent and his spouse in New York.
In deciding to apply New York law rather than the law of Louisiana we wrote (pp. 133-134):
“ The choice of law problem here should be resolved by an examination of the contacts which Louisiana and New York have with this controversy for the purpose of determining which of those jurisdictions has the paramount interest in the application of its law. * * * [T]his process requires us' ‘ first to isolate the issue, next to identify the policies embraced in the laws in conflict, and finally to examine the contacts of the respective jurisdictions to ascertain which has a superior connection with the occurrence and thus would have a superior interest in having its policy or law applied. ’ * * *
“ The issue in this case is whether the community property laws of Louisiana should be applied to govern the property rights of New York domiciliarles in intangible personal property acquired during coverture. From the previous discussion, it is clear that the community property system is designed to regulate the property rights of married persons and, in particular, to protect the interest of each spouse in the property accumulated during marriage. * * * For reasons which become obvious *17 merely in stating the purpose of the rule, Louisiana has no such interest in protecting and regulating the rights of married persons residing and domiciled in New York.
“ The State of New York which has such an interest has not adopted a community property system. Instead it has sought to protect a surviving spouse by giving her a right to take one third of the entire estate of the deceased as against a testamentary disposition by which the deceased has attempted to exclude her from a share of the estate. * * * And, depending upon the nature of the property in the estate, a surviving spouse under New York law might well be entitled to receive a greater portion of the over-all estate than under the community property system.
“ By affording the surviving spouse such a right in the estate of the deceased spouse, the Legislature has sought to preserve the right of the testator to distribute his property as he desires, while at the same time to provide protection for the surviving spouse. New York, as the domicile of Martha and Powell Crichton, has not only the dominant interest in the application of its law and policy but the only interest.”
In rejecting a quantitative grouping of contacts, we noted (p. 135, n. 8) that “ Contacts obtain significance only to the extent that they relate to the policies and purposes sought to be vindicated by the conflicting laws ” and that in the case before us the contacts urged as significant had ‘ ‘ no relation whatever ” to the purpose sought to be vindicated by Louisiana’s community property laws.
The reasoning of Crichton was followed recently in Matter of Clark (21 N Y 2d 478, 485-486 [1968]) where we held that “ As between two states, the law of that one which has the predominant, if not the sole, interest in the protection and regulation of the rights of the person or persons involved should, of course, be invoked.” (See, also, Reich v. Purcell, 63 Cal. Rptr. 31 [1967]; Griffith v. United Air Lines, 416 Pa. 1 [1964]; Wilcox v. Wilcox, 26 Wis. 2d 617 [1965]; Currie, Comments on Babcock v. Jackson, 63 Col. L. Rev. 1212, 1235 [1963]; Traynor, Is This Conflict Really Necessary?, 37 Texas L. Rev. 657 [1959].)
Applying then the choice-of-law rule which has evolved from Babcock v. Jackson (supra) through Matter of Clark (supra), we conclude that in the instant case, as the facts are presented *18 to us, it is New York which has “ the predominant * * * interest in the protection and regulation of the rights of the * * * persons involved ” (21 N Y 2d 485-486).
The problem with which we are concerned here involves the manner in which the family of one whose life has been wrongfully taken is to be compensated for the loss which they have suffered. While the wrongful death statutes of both New York and Maine recognize the ‘ ‘ principle * * * that the next of kin are wronged by the killing of their kinsman ” (Loucks v. Standard Oil Co., 224 N. Y. 99, 104), they differ in the manner in which they define the rights of the injured family and the wrongdoer.
The State of New York via constitutional provision has chosen not only to permit full recovery but also to prohibit any legislative enactment attempting to do otherwise. (Constitution of 1894, art. I, § 18.) Prior to the adoption of the Constitution of 1894, recoveries for wrongful death were limited to the sum of $5,000 (Code Civ. Pro. [1894], § 1904). The Record of Debates of the Constitutional Convention of 1894 (Vol. 2, pp. 581-595, 651, 652, 947-962) indicates that the framers of the constitutional provision regarded the arbitrary limitation of $5,000 as absurd and unjust and that “ this amendment was adopted for the benefit of the next of kin of the bread winner, persons who, in fact, sustained large pecuniary damage on account of the negligent act which removed the person and deprived dependents upon him of their substance, and which was not measured or recompensed by thé sum awarded under the limitation. To such persons it is the evident purpose [of the amendment prohibiting the enactment of any legislation limiting recoveries in wrongful death actions] to authorize a recovery measured by the actual loss sustained ”. (Medinger v. Brooklyn Hgts. R.R. Co., 6 App. Div. 42, 46-47; see, also, Kilberg v. Northeast Airlines, 9 N Y 2d 34 [1961].)
It is obvious, merely in outlining the purpose of the New York prohibition against limitations on recovery, that this State is vitally concerned with the manner in which the wife and children of a New York decedent will be compensated for the economic loss they have suffered as a result of the wrongful killing of their “ bread winner ”. (Long v. Pan Amer. World Airways, 16 N Y 2d 337 [1965]; see, also, Reich v. Purcell, 63 Cal. Rptr. 31, supra; Griffith v. United Air Lines, 416 Pa. 1, supra; Gore v. *19 Northeast Airlines, 373 F. 2d 717, 720 [2d Cir., 1967]; Tramontana v. S.A. Empresa De Viacao Aerea Rio Grandense, 350 F. 2d 468, 473 [D. C. Cir., 1965].[2])
Our inquiry as to the choice of an appropriate law cannot, however, stop merely in defining a New York interest—^albeit a substantial one — in the application of the particular law which is the object of the conflict. We must recognize that, in addition to the interest in affording the plaintiff full recovery, there may be other more general considerations which should concern “ a justice-dispensing court in a modern American state ”, (Leflar, Choice-Influencing Considerations in Conflicts Law, 41 N. Y. U. L. Rev. 267, 295.) Among other considerations are the ‘ ‘ fairness ’ ’ of applying our law where a nonresident or even a resident has patterned his conduct upon the law of the jurisdiction in which he was acting (Babcock v. Jackson, 12 N Y 2d 473, 483,. supra) as well as the possible interest of a sister State in providing the remedy for injuries sustained as a result of conduct undertaken within its borders (see, e.g., Oltarsh v. Aetna Ins. Co., 15 N Y 2d 111, 117; Watson v. Employers Liab. Corp., 348 U. S. 66, 72; see, also, Note, 74 Harv. L. Rev. 357, 379).
As we view the facts in this case, however, we perceive no substantial countervailing considerations of the kind described above which would warrant the rejection of our own law in favor of that of Maine. The Maine statute with which we are concerned here, dealing as it does with the nature of the remedy for concededly tortious conduct, is obviously not the kind of statute which regulates conduct and, therefore, is not the kind of statute upon which a person would rely in governing his conduct. The only justifiable reliance which could be present here would involve the purchase of liability insurance in light of the rem *20 edies available to an injured person. No such reliance is claimed here and, as a more careful examination of the problem reveals, this is not without good reason.
Under Maine law as it existed at the time of the accident, the defendants would have been Silly liable for compensatory damages, had the decedent not been killed but merely injured and this no matter how serious his injuries. We have been advised by the Insurance Department of the State of Maine that, despite the limitation on recovery in wrongful death actions, the standard automobile liability policies issued in Maine drew no distinction' between liability coverage for wrongful death and personal injuries. It would, therefore, appear that no proper Claim that the defendants relied upon the limitation in purchasing insurance can be made here and, as we have noted, no such claim is made.
We reject the argument advanced in the dissenting opinion that the choice of applicable law in this tort action should be determined on the basis of the expectations of the parties as derived from their contact with the State of the place of the accident.[3] Such a determination of the applicable law is based upon an obvious fiction having little to do with laws in conflict. As Professor David Cavers has observed: ‘ ‘ Though our nation is divided into fifty-one separate legal systems, our people act most [of] the time as if they lived in a single one. * * * [They suffer from a] chronic failure to take account of differences in state laws ”. (Cavers, The Choice-of-Law Process, p. 119.) It is for this reason that “ [f]ew speculations are more slippery than assessing the expectations of parties as to the laws applicable to their activities, and especially is this true when the expectations relate to the law of torts ”. (Cavers, op. cit., p. 302; see, also, Traynor, Conflict of Laws in Time, 1967 Duke L. J. 713, 715.)
*21 With respect to the liability insurer—the real party in interest — a somewhat different situation obtains. The insurer may have expected that Maine’s limitation on death recoveries would apply to accidents in Maine. But here in determining whether any unfairness will result by virtue of the application of New York law, we may also consider the fact that the policy in question was not and could not have been limited to affording protection only to accidents occurring in the State of Maine (Maine Rev. Stat. Ann., tit. 29, § 781 et seq.) and that, therefore, the possibility of liability in excess of $20,000 was certainly not unexpected and was insured against. Moreover, an analysis of the actuarial process as well as an inquiry to the Insurance Commission of the State of Maine reveals that the presence of the limitations had no substantial effect on insurance premiums, and a refusal to apply Maine law here will have an infinitesimal effect, if that, on insurance rates in Maine (see Morris, Enterprise Liability and the Actuarial Process — The Insignificance of Foresight, 70 Yale L. J. 554, 560-581).
Having found no considerations present here arising out of fairness to the nominal or real party defendant, we turn next to the question of whether the application of New York law here will unduly interfere with a legitimate interest of a sister State in regulating the rights of its citizens, at least with regard to conduct within its borders. Here again we perceive no reason to deny application of our own law. To the extent that the Maine limitation evinced a desire to protect its residents in wrongful death actions, that purpose cannot be defeated here since no judgment in this action will be entered against a Maine resident. Maine would have no concern with the nature of the recovery awarded against defendants who are no longer residents of that State and who are, therefore, no longer proper objects of its legislative concern. It is true that, at the time of the accident, the defendants were residents of Maine but they would have no vested right to the application of the law of their former residence unless it could be demonstrated that they had governed their conduct in reliance upon it (Griffith v. United Air Lines, supra) —■ a reliance which is neither present nor claimed in the case at bar. Any claim that Maine has a paternalistic interest in protecting its residents against liability for acts committed while they were in Maine, should they move to another jurisdiction, is *22 highly speculative and ignores the fact that for the very same acts committed today Maine would now impose the same liability as New York.
There may be times where policy considerations such as a desire to prevent forum shopping would require us to ignore changes in domicile after the accident (Gore v. Northeast Airlines, supra; Reich v. Purcell, supra). In the instant case, however, the change in domicile has nothing whatever to do with a desire to achieve a more favorable legal climate, and we see no reason to ignore the facts as they are presented at the timé of the litigation. The two considerations urged in the dissenting opinion — the likelihood of discouraging wrongdoers from settling in this State lest they be held to respond for their wrongdoing and the possibility that wrongdoers will settle here in a collusive attempt to fix broader liability upon the insurer—contradict each other, are speculative and are insufficient to move us to disregard the change in domicile.[4]
The argument advanced by the defendants that the application of New York law would violate the full faith and credit clause of the Federal Constitution is predicated upon the assumption that Maine has ‘ ‘ the most significant relationship with the issue ” and “ the more substantial interest in the application of its law ”. (Brief for Appellants, p. 24.) As these terms are defined for both constitutional as well as choice-of-law purposes (see Currie, Full Faith and Credit, 1964 Supreme Court Review 91-103), it is New York rather than Maine which has the most significant relationship with the issue in the case at bar and the most significant interest in the application of its law. We, therefore, perceive no constitutional infirmity in the application of New York law under the facts presented here. (See Alaska Packers Assn. v. Industrial Acc. Comm., 294 U. S. 532 [1935]; Crider v. Zurich Ins. Co., 380 U. S. 39 [1965]; Clay v. Sun Ins. *23 Off., 377 U. S. 179 [1964]; Watson v. Employers Liab. Assur. Corp., 348 U. S. 66 [1954]; Griffin v. McCoach, 313 U. S. 498 [1941].)
For the reasons "'stated the order of the Appellate Division should be affirmed and the question certified answered in the affirmative.

. There are no Maine decisions dealing with the retroactivity of the amendment. The prevailing rule, however, is that such amendments are substantive in nature and, in the absence of clear legislative indication to the contrary, are not applied retroactively (see Ann., Retroactive Effect of Statute Which Imposes, Removes or Changes a Monetary Limitation of Recovery For Personal Injury or Death, 98 ALR 2d 1105). Maine adheres to this general rule of construction (Stetson v. Johnson, 159 Me. 37; Miller v. Fallon, 134 Me. 145) and it may be presumed that it would follow the authority cited above. (Cf. Dalton v. McLean, 137 Me. 4.)

. Contrary to the assertion in the dissenting opinion (p. 27, n. 1) that constitutional provisions like statutory enactments “are deemed intended as plenary within a territory and nonfunctioning outside the territory ”, we have recently made it quite clear that in an appropriate case our statutory and constitutional provisions will be applied to govern the rights of the parties even where the conduct giving rise to the litigation occurs outside this State (Farber v. Smolack, 20 N Y 2d 198, 204 [1967]; see, also, Maffatone v. Woodson, 99 N. J. Super. 559 [N. J. Superior Ct., 1968], applying New York Vehicle and Traffic Law, § 388, to an action arising out of an accident in Few Jersey).

. See, e.g., Macey v. Rozbicki, 18 N Y 2d 289, where we rejected the application of an Ontario guest statute even though the defendants—New York domieiliaries — resided there for some three months a year, the plaintiff, also a New Yorker, was there for at least 10 days, and the trip during which the accident occurred was between two points in Ontario. This case clearly cannot be distinguished by suggesting, as the dissenting opinion does, that the parties’ presence in Ontario was merely transient and that the fact that the accident occurred there was “little more than a happenstance” (22 N Y 2d 24).

. The decision of the United States Court of Appeals in Gore v. Northeast Airlines (supra) to ignore the change in domicile even though no question of forum shopping was there present was based on the fact that the policy considerations motivating the New York prohibition against limitations were sufficiently broad to survive the change in domicile after the accident (see discussion in Cavers, The Choiee-of-Law Process, p. 151, n. 16). A second ground given by the court was predicated upon an erroneous application of a New York case (Matter of Meekin v. Brooklyn Hgts. R.R. Co., 164 N. Y. 145 [1900]) having no relevance to a choice-of-law problem (373 F. 2d 723).