Anna Pandick OAKLEY, Individually and as Executrix of the Goods, Chattels and Credits which were of the Estate of H. Wayne Oakley (Deceased), Plaintiffs,

v.

NATIONAL WESTERN LIFE INSURANCE COMPANY, Successor in interest to the National Bellas Hess Life Insurance Company, Defendant.

No. 66 Civ. 2337.

United States District Court
S. D. New York.

Aug. 21, 1968.

Leaf, Kurzman & Deull, New York City, for plaintiffs.

Herman A. Benjamin, New York City, for defendant.

MOTLEY, District Judge.

This is an action to recover on a group insurance policy which the defendant insurer admits "was written with * * * [it] by the Employer of the Insured, for the benefit of its employees." Both sides moved for summary judgment. Fed.R. Civ.P. 56. Plaintiff's motion is granted and defendant's motion is denied.

Plaintiff was the wife of H. Wayne Oakley, deceased. At all times relevant to this action, both Mr. and Mrs. Oakley were New York domiciliaries. Oakley was a director of National Bellas Hess, Inc., ("Hess") a Delaware corporation with its principal place of business in Missouri.

At all times relevant to this action, the defendant insurer was a Missouri corporation with its principal place of business in Missouri.

Effective December 1, 1954, the insurer, then a wholly owned subsidiary of Hess, issued to Hess a group life insurance policy. In 1960, directors of Hess became eligible for coverage and, effective May 1, 1960, Oakley was covered, to the extent of $25,000. Plaintiff was the beneficiary of that coverage.

Oakley paid premiums of $150 per annum for this coverage; Hess paid an additional sum of approximately ten times this amount. Oakley paid the premiums to Hess which, in turn, paid the full premium to the insurer.

Oakley resigned as a director of Hess, effective May 26, 1965. He died on September 9, 1965, more than 31 days but less than 90 days after the termination of his employment with Hess. Oakley was not notified of his right to convert his insurance policy within 90 days after the termination of his employment.

The contract of insurance provided as follows:

"Section 10. CONVERSION PRIVILEGE—Upon termination of employment of any Employee, all his insurance hereunder shall cease, in accordance with the Formula, and the said Employee shall be entitled to have issued to him by the Company, without evidence of insurability, and upon application made to the Company within thirty-one (31) days after such termination of employment, and upon payment of the premium applicable to the class of risk to which he belongs and to the form and amount of the policy at his then-attained age (nearest birthday), a policy of Life Insurance in any one of the forms customarily issued by the Company, except Term Insurance, in an amount equal to or, at the option of the Employee, less than the amount of his insurance under this Policy at the time of such termination.

"An individual policy so applied for shall become effective only upon the cessation of the insurance hereunder of the Employee so applying. The Company shall, upon the cessation of the insurance hereunder on any Employee because of termination of employment, be released from any liability on account of such Employee unless and until such individual policy is issued in accordance with the provisions of this Section, except as provided in Section 2 hereof."

Oakley made no attempt to convert.

The issues involved in this case were narrowed by the pretrial order of Febru-

ary 15, 1968. The parties agreed, and it was so ordered, that if New York law governs the contract, plaintiff is entitled to recover, and, if Missouri law governs, plaintiff is entitled to recover only if defendant waived its rights under the "Extended Death Benefit" provision.[1]

Under New York law, if applicable, the absence of affirmative notification subsequent to the termination of employment conferred upon deceased the right to convert for 90 days after the termination of coverage, and death before the expiration of the 90 day period is deemed the exercise of the right of conversion. New York Insurance Law, McKinney's Consol.Laws, c. 28, § 204 (3); see Payne v. Equitable Life Assurance Society of the United States, 11 N.Y.2d 1006, 229 N.Y.S.2d 752, 183 N.E. 2d 763 (1962) affirming 14 A.D.2d 266, 220 N.Y.S.2d 493 (First Dept. 1961); De Ville v. Continental Assurance Co., 10 A.D.2d 386, 199 N.Y.S.2d 876 (4th Dept.) aff'd 8 N.Y.2d 1080, 207 N.Y.S. 2d 453, 170 N.E.2d 457 (1960).

As jurisdiction of this court is grounded on diversity of citizenship, this court is bound to apply the law of the State of New York; Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487 (1938) including its conflicts of law rules; Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Zogg v. Penn Mutual Life Insurance Co., 276 F.2d 861 (2d Cir. 1960). The question, therefore, is whether New York, under its conflicts of law rules, would apply, in this case, New York law or Missouri law to the issue of whether a certificate holder of a group insurance policy is entitled to affirmative notice of his right to convert.

At least since Auten v. Auten, 308 N.Y. 155, 124 N.E.2d 99, 50 A.L.R.2d 246 (1954), New York has followed the "center of gravity" or "grouping of contacts" theory of conflicts of law. "[I]t gives to the place 'having the most interest in the problem' paramount control over the legal issues arising out of a particular factual context, thus allowing the forum to apply the policy of the jurisdiction 'most intimately concerned with the outcome of the particular litigation'". Id. at 161, 124 N.E.2d at 102. New York, it is clear, would apply the law of the state "which has the most significant contacts with the matter in dispute." Id. at 160, 124 N.E.2d at 102. It is less clear, however, how this is done.

There is no reason why all of the issues arising out of a given claim or set of facts must be decided by the same state's law. Reese, Comments on Babcock v. Jackson, 63 Col.L.Rev. 1212, 1253 (1963); see, Babcock v. Jackson, 12 N.Y. 2d 473, 484, 240 N.Y.S.2d 743, 752, 191 N.E.2d 279, 95 A.L.R.2d 1 (1963). One must examine and evaluate the contacts relevant to the particular issue to determine which law should be applied. Reese, op cit. supra. See, Restatement, 2nd, Conflicts of Law, Proposed Official Draft, May 1, 1968 § 188:

> (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, *as to that issue*, has the most significant relationship to the transaction and the parties.
> * * *
>
> (2) * * *
>
> These contacts are to be evaluated according to their relative importance *with respect to the particular issue*. (Emphasis added.)

New York courts have delineated the methodology to be employed in this procedure. "[F]irst * * * isolate the issue, next * * * identify the policies embraced in the laws in conflict, and finally * * * determine the contacts of the respective jurisdictions to ascertain which has a superior connection with the occurrence and thus would have a superior interest in having its

---

1. Since this court decides New York law governs, we need not concern ourselves with this latter issue.

policy or law applied." Dym v. Gordon, 16 N.Y.2d 120, 124, 262 N.Y.S.2d 463, 466, 209 N.E.2d 792, 794 (1965). It appears that in New York the most significant "contacts" to be evaluated are the relative interests of the states involved. See, for example, In Re Crichton, 20 N.Y.2d 124, 281 N.Y.S.2d 811, 228 N.E.2d 799 (1967); Miller v. Miller, 22 N.Y.2d 12, 290 N.Y.S.2d 734, 237 N.E.2d 877 (1968). Cf. Restatement, 2nd, Conflicts of Law, Proposed Official Draft, May 2, 1967, § 6.

In In re Crichton, supra, a case involving the applicability of Louisiana's community property law to intangible personal property of a New York decedent located in Louisiana, the New York Court of Appeals phrased the test this way:

> The choice of law problem here should be resolved by an examination of the contacts which Louisiana and New York have with this controversy for the purpose of determining which of those jurisdictions has the paramount interest in the application of its law. 20 N.Y.2d at 133, 281 N.Y.S.2d at 819, 228 N.E.2d at 805.

Most recently, Judge Keating, after acknowledging the inadequacy and inconsistency of past New York conflicts decisions, reiterated this test. He stated:

> " * * * the rule which has evolved clearly in our most recent decisions is that the law of the jurisdiction having the greatest interest in the litigation will be applied and that the facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict." Miller v. Miller, supra, 22 N.Y.2d at 15, 290 N.Y.S.2d at 737, 237 N.E.2d at 879.

And see, In Re Clark, 21 N.Y.2d 478, 485–486, 288 N.Y.S.2d 993, 998, 236 N.E.2d 152, 156 (1968):

> "As between two states, the law of that one which has the predominant, if not the sole, interest in the protection and regulation of the rights of the person or persons involved should, of course, be invoked." (per Fuld, C. J.)

This is especially true when the New York Court of Appeals sees no contravailing interest in the other state. In Re Crichton, supra; In re Clark, supra. This approach has received erudite approval:

> " * * * courts must be on the alert against making exceptions to the local law that would defeat a legitimate interest of the forum state without serving the interest of any other state." Traynor, "Is This Conflict Really Necessary?", 37 Texas L.Rev. 657, 669 (1959).

We turn now to an examination of the contacts involved in this case. The most significant are:

(1) Both plaintiff and decedent were, at all times relevant to this action, New York domiciliaries.

(2) Decedent paid premiums on this policy and did so by mailing them from New York to Missouri.[2]

(3) The policy was issued in Missouri.

(4) The policy was issued by a Missouri corporation to its parent, a Delaware corporation doing business in Missouri.

The other contacts urged upon this court by the parties; i. e., that Hess has a bank account in New York, or that Hess paid premiums to defendant in Missouri; do not appear to be signifi-

---

2. It is true, as defendant points out, that the premiums were mailed to Hess not to the defendant insurer. Defendant, however, attaches the wrong significance to this fact. This would be relevant were the defendant challenging the *jurisdiction* of this court and if jurisdiction were based upon this mailing. See, e. g., McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed. 2d 223 (1957). Here, however, defendant has specifically chosen not to contest the process and jurisdiction of this court, but to defend on the merits. On the merits, the fact that decedent mailed his share of the premiums from New York is a relevant *contact* to be considered in a choice-of-laws problem.

cant. "Contacts obtain significance only to the extent that they relate to the policies and purposes sought to be vindicated by the conflicting laws. Once these contacts are discovered and analyzed, they will indicate (1) that there exists no true conflicts of law, as in the case at bar and as in most choice of law cases, or (2) that a true conflict exists, i. e., both jurisdictions have an interest in the application of their law. In the former case, of course, the law of the jurisdiction having the only real interest in the litigation will be applied." In Re Crichton, supra, 20 N.Y.2d at 135, n. 8, 281 N.Y.S.2d at 820–821, 228 N.E. 2d at 806. It is hard to see how, under this test, these other contacts are significant.

What do these contacts indicate as to the relative interests of the states involved? New York clearly has an interest in assuring its domiciliaries are notified of the right to convert group insurance policies. The state has evidenced this interest and taken steps to protect it. See, De Ville v. Continental Assurance Co., 10 A.D.2d 386, 199 N.Y.S.2d 876, 878–882 (4th Dept. 1960), for a history of the Section 204 of the Insurance Law. "The central theme * * * was that many certificate holders were ignorant of the conversion privilege and the giving of notice thereof should be required or in the absence thereof the period of conversion extended." 199 N. Y.S.2d at 881. The legislative intent and rationale, as delineated by the *De Ville* case, supra, applies equally to policies issued outside the state covering New York residents. The evil to be remedied was the absence of knowledge in New York residents of their right to convert group life insurance policies. *De Ville*, supra. Certainly this is a legitimate interest of the state, especially when exercised to protect its citizens who pay premiums in or from New York.

Missouri has no comparable regulatory policy. Defendant would be entitled to summary judgment on this point if Missouri law were applicable solely because Missouri allows the conversion privilege clause, supra, to be read literally, and imposes no additional affirmative duty of notification on the insurer. Johnson v. Travelers Ins. Co., 239 Mo.App. 599, 194 S.W.2d 938 (1946). Missouri might have an interest in protecting its own corporations;[3] but while this interest may go so far as to protect the corporations from fraudulent claims, Missouri has done nothing to indicate any interest in excusing an insurance company from notifying certificate holders of their right to conversion. Indeed, Missouri's interest is possibly just the opposite. Missouri is probably interested in giving notice to certificate holders so that they can convert and do business with the Missouri company.

Were this policy delivered to the employer in New York, rather than issued in Missouri, N. Y. Insurance Law, Section 204(3), by its very terms, would govern the policy and plaintiff would be entitled to recover. But even though the policy was issued in Missouri, it is clear that New York has "the predominant * * * interest in the protection and regulation of the rights of the * * * persons involved." Miller v. Miller, supra, 290 N.Y.S.2d at 738, 237 N.E.2d at 880. New York's interest infringes on no interest of Missouri, and New York law must be applied in this case. See, Traynor, op. cit. supra.

The result is not surprising. The Restatement, 2nd, Conflicts of Law, Proposed Official Draft, May 1, 1968, provides:

"§ 192. Life Insurance Contracts. The validity of a life insurance contract and the rights created thereby are determined by the local law of the

---

**3.** Applying New York law, it should be noted, does, in a sense protect the other Missouri corporation (Hess). If fringe benefits are considered important, the expanded coverage provided by this decision will, presumably, make it easier for Hess, the parent company of the insurer, to procure able employees and directors.

state where the insured was domiciled at the time the policy was issued, unless, with respect to a particular issue, some other state has a more significant relationship to the transaction and the parties, in which event the local law of the other state will be applied.[4]

In Fleet Messenger Service, Inc. v. Life Insurance Co. of North America, 315 F.2d 593 (2nd Cir. 1963), the Second Circuit, applying the New York conflicts rules to an insurance contract, held that New York would apply its own law to a situation in which the only contacts with New York were that the insured and the beneficiary were residents here. See Zogg v. Penn Mutual Life Ins. Co., 276 F.2d 861, 864 (2nd Cir. 1960):

"Decisions involving the application of the insurance laws of the several states to transactions including foreign elements appear irreconcilable in terms of any uniform conflicts-of-law theory. If any trend is discernible in these cases, it is that of a forum to apply its own law to adhesion contracts

of insurance entered into by its residents."

Employers Liability Assurance Corp. v. Aresty, 11 A.D.2d 331, 205 N.Y.S. 2d 711 (First Dept. 1960) aff'd no opinion, 11 N.Y.2d 696, 225 N.Y.S.2d 764, 180 N.E.2d 916 (1962) does not dictate a contrary decision. That 3–2 opinion of the Appellate Division, affirmed 4–3, clearly did not apply the choice of law rules of New York as explicated in the more recent cases.

■ National Screen Service Corp. v. United States Fidelity and Guaranty Co., 364 F.2d 275 (2nd Cir. 1966) also fails to aid defendants. That case contains no discussion of the conflicts problem as the parties conceded New York law governed. Id. at 277.[5]

Boseman v. Connecticut General Life Insurance Co., 301 U.S. 196, 57 S.Ct. 686, 81 L.Ed. 1036, 110 A.L.R. 732 (1936), the case closest factually to the instant case, also fails to support defendant's position. In that case, (1) the court was not applying New York conflict laws;[6]

---

4. Comment "g" states:

"Group Life Insurance. In the case of group life insurance, rights against the insurer are *usually* governed by the law which determines the validity of the master policy. This is because it is desirable that each individual insured should enjoy the same privileges and protection. So where an employer arranges for group life insurance for its employees, the rights of a particular employee against the insurer will *usually* be determined, *at least as to most issues*, not by the local law of the state where the employee was domiciled and secured his certificate but rather by the law governing the master policy with respect to that issue. This will usually be the state where the employer has his principal place of business.

Choice of law provisions contained in group life insurance policies are more likely to be given effect than in the ones of ordinary life insurance. This is because the organization or individual which procures the master policy will probably have a stronger bargaining position than an individual insured." (Emphasis added).

It must be noted that this comment acknowledges the possibility that as to

some issues the normal choice of law provisions apply. We are of the opinion that the issue before us is one of those.

Note also that the contract before us contains no choice of law provision.

5. Interestingly, this case is decided on the basis of New York's policy of favoring the insured. 364 F.2d at 277.

6. It is not clear what conflicts law the Supreme Court was looking to. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487 (1938) was not yet law. Swift v. Tyson, 16 Pet. 1, 10 L.Ed. 865 (1842) allowed federal courts in diversity cases to disregard state common law, a practice apparently followed by the Supreme Court in *Boseman*. 301 U.S. at 204, citing Swift v. Tyson, Id. at fn. 6. As explained above, this court must follow New York law, including its conflicts of law; Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); and so, if for no other reason, is not, and cannot be, bound by *Boseman*.

(2) there is no discussion (nor should one expect it in 1936) of the "grouping of contacts" or "center of gravity" theory; and (3) the most importantly, the policy at issue, itself, contained an effective choice of law clause, given effect by the Court. Id. at 203.

Thus, this court is convinced that New York courts choice of law applicable to the issue in controversy would be New York law and plaintiff must recover. This is not a harsh result, in this court's opinion. First, it is not unreasonable for the insurer to give notice to the insured that he has a right to convert his insurance. This is especially true in the case at bar where the insured was a director of the parent company of the insurer. Indeed, this court finds it surprising that no one bothered to give Oakley notice. Second, the insurance company can protect itself against the 59 day extension the New York law creates.[7] If notice is impracticable or expensive (which this court doubts) the insurance premiums can be adjusted to reflect the extra conversion time. Third, the insurance company may incorporate in its group insurance policies a choice of law provision. Cf. Restatement, 2nd, Conflicts of Law, Proposed Official Draft, May 1, 1968 § 192, comment "g", discussed supra at note 4. See, Boseman v. Connecticut General Life Insurance Co., supra. Cf. Ehrenzweig, "Adhesion Contracts in Conflict of Laws", 53 Col. L.Rev., 1072, 1076–1077 (1953). This court's decision has been necessitated by the fact that the parties to this contract did not specify what law would govern. There is nothing in the New York cases to indicate that the parties could not specify which law would govern as long as the law chosen bears a reasonable relation to the transaction. See, General Electric Credit Corp. v. Beyerlein, 55 Misc.2d 724, 286 N.Y.S.2d 351 (Sup.Ct. Monroe Cty. 1967) (applying the law of the parties' choice, Massachusetts, although it invalidates a contract provision); Heede, Inc. v. West India Machinery and Supply Co., 272 F.Supp. 236 (S.D.N.Y.1967); El Hoss Engineering & Transport Co. v. American Independent Oil Co., 183 F.Supp. 394 (S.D.N.Y. 1960); Restatement, 2nd, Conflicts of Law, Proposed Official Draft, May 1, 1968, § 187; Cf., Uniform Commercial Code § 1–105. Finally, New York, as noted above, has an interest in notifying its residents of their right to convert group life insurance contracts. New York's policy could be entirely thwarted if it were not to apply its law to the situation before us. Foreign insurance companies could issue policies, delivered outside of New York, covering New York residents and entirely circumvent New York law.[8]

In rare unanimity in a conflicts case, the New York Court of Appeals concluded, in In Re Crichton, supra, 20 N.Y.2d at 137, 281 N.Y.S.2d at 823, 228 N.E.2d at 808:

"In situations such as that present in this case, where the foreign jurisdiction has no interest in the application of its law, where there was no clear expression of intent that foreign law governs and where we have the power to apply our own law and give effect to the policy this State has adopted * * * we should apply our own law."

---

7. The policy itself provides 31 days during which the insured may convert.

8. This same problem may arise if the parties are allowed to choose the applicable law and decide to circumvent New York policy. There may, however, be limits to a choice of law in contravention of important policies. See, Forney Industries, Inc. v. Andre, 246·F.Supp. 333 (D.N.Dak.1965); Fricke v. Isbrandtsen Co., Inc., 151 F.Supp. 465 (S.D.N.Y.

1957); cf. In Re Crichton, supra, 20 N.Y.2d at 137 n. 10, 281 N.Y.S.2d at 823, 228 N.E.2d 799; Restatement, 2nd, Conflict of Laws, Proposed Official Draft, May 1, 1968, § 187. We are, of course, not faced with that problem here. Indeed, if insurance companies, through choice of law provisions, attempted to contravene important New York policies, undoubtedly the New York Legislature would deal with the problem.

We have examined the contacts with New York and Missouri, and the interests of both states, and concluded that a New York court would apply New York law to the issue involved in this case. As mentioned previously, the parties concede, and Judge McLean so ordered, that if New York law governs plaintiff is entitled to judgment. Thus, we grant plaintiff's motion for summary judgment and deny defendant's motion.

 Plaintiff also contends she is entitled to counsel fees pursuant to New York Insurance Law § 59–a(4). Defendant denies that this section is applicable. Under this section the court may award counsel fees when it appears that the refusal of the insurance company to make payment was "vexatious and without reasonable cause". It is enough for our purposes that this court concludes that defendant's refusal was neither vexatious nor without reasonable cause but based upon a reasonable, albeit erroneous, interpretation of the law.

Settle order on notice.