759 F.2d 1176
 Glenn P. KLIPPEL, Appellant,
v.
U-HAUL COMPANY OF NORTHEASTERN MICHIGAN, Appellee.
In re Glenn P. KLIPPEL,
v.
U-HAUL COMPANY OF NORTHEASTERN MICHIGAN, and In re Glenn P. KLIPPEL,
v.
U-HAUL COMPANY, et al.
 No. 84-1149.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 5, 1984.
Decided April 25, 1985.
 
 W. Bromley Hall, Greenlawn, N.Y. (Flanagan, Hall, Kelly, Ronan & Spollen, Greenlawn, N.Y., on brief), for appellant.
 Richard B. Watson, Columbia, S.C. (Edward W. Mullins, Jr., Robert W. Foster, Jr., Nelson, Mullins, Grier & Scarborough, Columbia, S.C., on brief), for appellee.
 Before WINTER, Chief Judge, SPROUSE, Circuit Judge and HAYNSWORTH, Senior Circuit Judge.
 HAYNSWORTH, Senior Circuit Judge:
 
 
 1
 About five o'clock on a November afternoon a U-Haul truck was proceeding in the northbound lanes of Interstate 85 in Cherokee County, South Carolina. It passed a trucker who observed the driver of the U-Haul vehicle leaning against the steering wheel and the passenger slumped largely under the truck's dashboard. The trucker observed the U-Haul vehicle in front of him weaving from lane to lane. It moved to its right on to the paved shoulder and beyond to the grass. It then turned abruptly to its left, crossed the northbound lanes and the median and slammed into the side of a southbound truck. Both occupants of the U-Haul vehicle were thrown out. The thoroughly inebriated driver of the U-Haul vehicle was killed and the passenger, the plaintiff Klippel, seriously injured.
 
 
 2
 Klippel, who was a resident of New York, filed an action in New York against U-Haul claiming damages for the injuries he had sustained in South Carolina under the New York Vehicle and Traffic Law Sec. 388, the first paragraph of which provides:
 
 
 3
 Every owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle, in the business of such owner, or otherwise, by any person using or operating the same with the permission, express or implied, of such owner.
 
 
 4
 It also requires that every registered owner of a motor vehicle in New York provide liability insurance covering the risk of vicarious liability under Sec. 388. The plaintiff's contention is that, because he was a resident of New York, Sec. 388 was applicable to the U-Haul vehicle when he sustained his injuries in South Carolina and that U-Haul, by virtue of the New York statute, must compensate him for the injuries he sustained as a result of the negligence of the driver of the vehicle, who also was a resident of New York.
 
 
 5
 The U-Haul vehicle was registered in Michigan. It had been rented by the driver's sister in Florida for the purpose of transporting some of her personal belongings from Florida to Spartanburg, South Carolina where she had rented an apartment into which she intended to move.
 
 
 6
 The case was removed from a state trial court in New York to the United States District Court for the Southern District of New York, which transferred it to the United States District Court for the District of South Carolina under the provisions of 28 U.S.C.A. Sec. 1404(a). Upon the ground that the substantive law of South Carolina governed and that South Carolina law did not hold a non-negligent owner of a vehicle vicariously liable for the negligence of a permittee operator, the district court entered summary judgment for U-Haul.
 
 
 7
 We affirm, for we conclude that the New York Court of Appeals would resolve the choice of law question by holding that Sec. 388 had no application in the circumstances of this case and that U-Haul's substantive liability should be resolved under the law of South Carolina.
 
 I.
 
 8
 The plaintiff, Klippel, and his friend, Petroccia, left New York City for a visit to Florida. They were hitch hikers. They arrived in Fort Lauderdale, Florida where they visited Petroccia's sister and Smith, the man with whom she lived. Smith and Petroccia's sister planned to move to Spartanburg, South Carolina, where they had rented an apartment. It was agreed that Klippel and Petroccia would drive a U-Haul truck loaded with the sister's belongings to her new apartment in Spartanburg, South Carolina. A few days later, the sister rented the U-Haul truck for a journey commencing in Fort Lauderdale and ending in Spartanburg. Sometime the next day, Petroccia and Klippel left Fort Lauderdale in the loaded vehicle. Twice they stopped for the night to visit other relatives, but in due time arrived in Spartanburg.
 
 
 9
 They moved the contents of the truck into the apartment to be occupied by Petroccia's sister and Smith. They then began to drink, or at least Petroccia did, for, after his death, his blood was found to have a very high alcohol content. The blood analysis also showed that he had used Quaaludes. In a deposition, the plaintiff denied that he had used either alcohol or any drug. He remembered being told by Petroccia that Petroccia had had a Quaalude, but the plaintiff remembered little else of the occurrences at the time, for he said that he had completely lost control of himself. In any event, for some inexplicable reason, in the late afternoon they were heading north in the then unloaded truck. Though the contract called for the surrender of the truck in Spartanburg the next day, the plaintiff suggests that they had resumed their return trip to New York in the rental truck. They did not get far, for Gaffney, South Carolina, the scene of the accident, is only approximately twenty miles from Spartanburg.
 
 II.
 
 10
 Because this case was transferred from the Southern District of New York to the District of South Carolina, we must treat New York as the forum state and resolve the conflicts of laws question with which we are presented as it would be resolved in the New York Court of Appeals. See Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). That court has been a leader in giving extra-territorial effect to New York law to avoid procedural and substantive limitations upon recoveries by New York plaintiffs injured, or whose decedents were killed, in other jurisdictions.
 
 
 11
 We may begin with Kilberg v. Northeast Air Lines, 9 N.Y.2d 34, 211 N.Y.S.2d 133, 172 N.E.2d 526 (1961). There a New Yorker had purchased an airline ticket in New York and boarded an airplane for a flight commencing in New York. The plane crashed in Massachusetts. Massachusetts had a statute which limited recoveries in wrongful death actions, while New York had a provision in its Constitution forbidding any such limitation of liability. The court regarded the site of the crash as fortuitous and adventitious. It might have been in a state other than the passenger's intended destination and over which he may have had no intention of even flying. In the context of modern travel by air, the court thought it outrageous that New Yorkers might be subjected to varying restrictive state laws when they had not chosen to subject themselves to the laws of those other jurisdictions and when New York's policy against statutory restrictions upon the amounts of recovery in wrongful death actions was so forcefully embodied in its Constitution.
 
 
 12
 The rule of Kilberg was extended in Miller v. Miller, 22 N.Y.2d 12, 290 N.Y.S.2d 734, 237 N.E.2d 877 (1968). In Miller, a New Yorker had been killed in Maine while riding in an automobile owned by his sister-in-law and driven by his brother, both of whom were residents of Maine. The New York Court of Appeals refused to apply Maine's statutory limitation upon the amount of damages recoverable in a wrongful death action brought in New York. A divided United States Court of Appeals for the Second Circuit reached a similar conclusion in Rosenthal v. Warren, 475 F.2d 438 (1973). In that case, the personal representative of a deceased New Yorker, by attachment upon the defendant's liability insurance contract, pressed a claim in New York for malpractice against a Boston physician who had operated upon and treated the New York decedent just before his death. The Massachusetts surgeon treated many New York patients, and the defendant hospital solicited funds in New York, but the essence of the holding seems to have been that New York's constitutional prohibition against limitations upon recoveries in wrongful death actions follows a New Yorker everywhere, provided he can get jurisdiction of an appropriate defendant in New York.
 
 
 13
 Meanwhile, after Kilberg, the New York Court of Appeals developed its "center of gravity," or "grouping of contacts," or "interest analysis" approach to the resolution of conflicts questions in tort cases.
 
 
 14
 The complete break with the past came with Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963). In that case, New Yorkers traveled from New York into Ontario, from which they intended to return to New York. A New York passenger was injured in Ontario, allegedly as a result of the negligence of the New York driver. The defendant raised the defense of Ontario's "guest statute" which, in the circumstances of the case, would have denied all recovery to the plaintiff. The New York Court of Appeals held the defense unavailable, since New York had no such statute. Ontario's interest in the controversy was thought to be insubstantial since both plaintiff and defendant were New Yorkers. The excursion originated in New York and was intended to terminate there. It was thought that if the Ontario statute was applied, the result would be anomalous, and it does seem something of a happenstance that the wreck occurred in Ontario rather than in New York, in which case New York law indisputably would have controlled.
 
 
 15
 Initially the new rule was not applied to outlaw guest statute defenses in trips of substantial duration during which the New York residents had developed substantial contacts with the state in which the accident occurred. Dym v. Gordon, 16 N.Y.2d 120, 262 N.Y.S.2d 463, 209 N.E.2d 792 (1965), but that approach was abandoned in Tooker v. Lopez, 24 N.Y.2d 569, 301 N.Y.S.2d 519, 249 N.E.2d 394 (1969). In Tooker, two New Yorkers were students at Michigan State University. In an automobile of New York registry, they were involved in a wreck in Michigan, and a New York passenger was killed. The New York Court of Appeals rejected a defense based upon Michigan's guest statute. See also, Macey v. Rozbicki, 18 N.Y.2d 289, 274 N.Y.S.2d 591, 221 N.E.2d 380 (1966).
 
 
 16
 On the other hand, comparable tenderness has not been apparent when the plaintiff or the plaintiff's decedent was not a New Yorker. In Neumeier v. Keuhner, 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972), a New York driver and an Ontario passenger were both killed in a collision occurring in Ontario. The court held that Ontario's guest statute was available as a defense to the claim of the executrix of the Ontario decedent. New York simply had no interest in relieving a citizen and resident of Ontario of the burden of meeting the requirements of Ontario's guest statute, while Ontario had a very substantial interest in seeing to the uniform application of its laws to all of its citizens when the cause of action arises in Ontario.
 
 
 17
 It is thus apparent that the New York Court of Appeals has striven to relieve New York domiciliaries of procedural and substantive limitations upon their rights of recovery for personal injuries or wrongful death when the limitations are imposed by the laws of other states or nations and the limitations are inconsistent with the laws of New York. Still, conflicts of laws questions in tort cases are usually to be resolved on the basis of lex loci delicti. The New York courts will depart from that rule only in "extraordinary circumstances." Cousins v. Instrument Flyers, Inc., 44 N.Y.2d 698, 405 N.Y.S. 441, 376 N.E.2d 914 (1978). Refusals to enforce guest statutes of other jurisdictions or their limitation of the amount of awards in wrongful death cases, when the interest of New York in the resolution of the controversy is great and that of the foreign jurisdiction little or non existent, are examples of such extraordinary circumstances.
 
 III.
 
 18
 Enforcement of the liability created by New York Vehicle Traffic Law Sec. 388 is different. Its application is not a means of avoidance of restrictive barriers created by other jurisdictions. It creates a new substantive cause of action where none before existed. Its design was to facilitate actual recoveries of awards by innocent victims of automobile accidents, but the purpose is accomplished by placing a burden upon innocent owners of vehicles "used or operated in the state," and every owner of a vehicle registered in New York is required to have Sec. 388 liability insurance. Thus, when the offending vehicle is registered in New York, no matter how financially irresponsible the driver of the vehicle may be, the innocent victim is assured of a financially responsible defendant, at least to the extent of the policy limits of the liability insurer, so long as the vehicle was being operated with the permission of the owner.
 
 
 19
 In this scheme, the innocent victim class is not limited to New Yorkers, but there must be a connection between the vehicle and its owner on the one hand and the state of New York. That connection is required by the statute itself, and is essential to New York's exercise of its legislative powers.
 
 
 20
 When all of the individuals involved are New Yorkers and the vehicle is of New York registry, there is clearly no problem about the application of Sec. 388, though the injury was sustained in another state. The state in which the injury was sustained has no interest in defeating the additional security provided to the injured person by the application of Sec. 388. Nor is it concerned with limiting the liability of the New York owner. New York is the only state whose interest is involved in the question of the application of its Sec. 388 in such circumstances. Indeed, Sec. 311(4)(a) of New York's Vehicle and Traffic Law provides that the owner's insurance coverage must extend to any claim arising within the continental United States or the Dominion of Canada.
 
 
 21
 Thus, the New York Court of Appeals held Sec. 388 applicable when the New York owner of a New York registered vehicle lent the vehicle to his brother for a trip to Florida. The New York passenger was injured in North Carolina in an accident which occurred on the return trip. Farber v. Smolack, 20 N.Y.2d 198, 282 N.Y.S.2d 248, 229 N.E.2d 36 (1967). See also In re Sentry's Insurance Co. (Amsel), 36 N.Y.2d 291, 367 N.Y.S.2d 480, 327 N.E.2d 635 (1975).
 
 
 22
 Other courts have unhesitatingly applied Sec. 388, though the action occurred outside of New York and the injured person was not a New Yorker, so long as the offending vehicle was registered in New York and the owner was a resident or doing business there. In Johnson v. Hertz Corp., 315 F.Supp. 302 (S.D.N.Y.1970), the injured persons were residents of Massachusetts and the injuries were suffered in New Jersey, but the offending vehicle was registered in New York where Hertz was engaged in business. In reaching his conclusion, Judge Tyler emphasized the relation between the substantive provisions of Sec. 388(1) and New York's regulatory liability insurance laws.
 
 
 23
 Similarly, in White v. Smith, 398 F.Supp. 130 (D.N.J.1975), Sec. 388 was held to be applicable though the accident occurred in New Jersey, the plaintiffs resided in Pennsylvania, and the driver of the rental vehicle was a resident of Michigan. It was enough that the New York registered vehicle had been leased in New York by Chrysler Leasing Corporation to Avis Rent-A-Car and sublet by Avis to the defendant Smith.
 
 
 24
 There are limitations, however, to Sec. 388's application to injuries sustained in states other than New York.
 
 
 25
 In Rogers v. U-Haul Co., 41 A.D.2d 834, 342 N.Y.S.2d 158 (1973), a resident of Alabama had been killed in an accident in Pennsylvania while riding as a passenger in the U-Haul vehicle. The driver of the vehicle was a New York resident, and he rented the vehicle in New York, but the vehicle itself was registered in the District of Columbia. Because of the foreign registry of the vehicle, the appellate division of the Second Department held that the law of Pennsylvania should be applied and that New York's Sec. 388 was inapplicable.
 
 
 26
 The New York Court of Appeals also has held Sec. 388 unavailable to a non-resident plaintiff who was a passenger in a Michigan registered vehicle that a British citizen had rented in Montreal for a trip to New York. The vehicle lease required the lessee to return the rental vehicle in New York, but the accident had occurred in Vermont before reaching the New York border. The Court of Appeals held that it was not enough that the driver's destination was New York and that National Car Rental expected to have the vehicle redelivered to it in that state. Croft v. National Car Rental, 56 N.Y.2d 989, 453 N.Y.S.2d 631, 439 N.E.2d 346 (1982).
 
 
 27
 Only one case points the other way, Cunningham v. McNair, 48 A.D.2d 546, 370 N.Y.S.2d 577 (1975). In that case, the plaintiff was a New Yorker in an automobile owned by a New Yorker and registered in that state. It was involved, however, in a collision with an Avis rental car in Maryland and the claim was against Avis. Its car, registered in Virginia, had been leased in Baltimore to a resident of Mississippi. A divided appellate division held that liability could be imposed upon Avis under Sec. 388.
 
 
 28
 In Cunningham, New York had abundant connection with the privately owned vehicle and with the plaintiff, but apparently none with the rental vehicle. Since the offending vehicle was neither owned by a New Yorker nor registered in that state, the holding in Cunningham seems completely inconsistent with the later holding of the New York Court of Appeals in Croft. The decision in Cunningham has been criticized as "probably erroneous" and as presenting such a far-reaching application of New York law that it is "presumably a violation of due process." See Herzog Conflict of Laws, 31 Syracuse L.Rev. 89, 105 (1980); Herzog, Conflict of Laws, 27 Syracuse L.Rev. 17, 30 (1976).
 
 
 29
 We need not decide the federal constitutional question for we are convinced the New York Court of Appeals would not follow Cunningham. We look for guidance in New York law to the decisions of its highest court. Decisions of the Appellate Division of its Supreme Court are binding upon us in the absence of any guidelines from the Court of Appeals, but we are free to disregard such a decision when it appears to be an aberration and we are reasonably convinced that the New York Court of Appeals would not embrace it. See 19, Wright, Miller & Cooper, Sec. 4507, pp. 94, et seq.
 
 IV.
 
 30
 Here, we are unconcerned with the application of laws regulating the operation of vehicles in the state of South Carolina or prescribing the standards of care which must be exercised by passengers in moving vehicles. With respect to the application of such laws to vehicular collisions occurring in South Carolina, that state has great interest while New York has none. We are now concerned only with the possible application of New York's Sec. 388, and, to the extent that analysis under Babcock v. Jackson is appropriate, we must weigh the interests of New York and of South Carolina in the application or non-application of that statute.
 
 
 31
 New York has an interest in providing additional security for the protection of innocent victims, whether or not residents of New York, of vehicular accidents. To the extent that it does so by creating statutory vicarious liability upon innocent owners and by requiring liability insurance covering the possible statutory liability, it may do so only if the owner or the vehicle has such a connection with New York as to warrant New York's exercise of its legislative powers. It has little or no legitimate interest in providing additional security for the protection of innocent New York residents who are injured in other states while riding in vehicles having no connection with New York.
 
 
 32
 The defendant, U-Haul, does business in New York, as it does in most, if not all, of the other contiguous forty-eight states, but this vehicle was not registered in New York, and the lease was not executed there. The vehicle was registered in Michigan and was leased in Florida to a Florida resident for a one-way trip to South Carolina. So far as appears, the vehicle had never been in New York State, and there is no indication that its owner had any intention that it be driven into that state. In such circumstances, though the injured plaintiff was a resident of New York, New York has little interest in regulating the rights and liabilities arising out of the Florida lease.
 
 
 33
 South Carolina, on the other hand, does have a substantial interest in protecting the owners of vehicles while being operated in that state from unforeseen, uninsured liabilities. Adoption by South Carolina of a statute comparable to New York's Sec. 388 would impose costs upon South Carolina vehicle owners which South Carolina has not undertaken to impose. Had South Carolina adopted such a statute, it probably would not have an interest in applying it under the circumstances of this case under the decision of the New York Court of Appeals in Croft v. National Car Rental. But South Carolina does have a very substantial interest in seeing that the victims of automobile accidents occurring in that state are treated fairly and uniformly and that some of those victims not be granted extraordinary rights and preferences solely because of the victim's residence in New York.
 
 V.
 
 34
 Though the New York Court of Appeals has not embraced this theory, the problem might be resolved better by recognizing that it need not be treated as a conflict of tort law subject to resolution under a Babcock v. Jackson analysis.
 
 
 35
 Before 1928, Connecticut had a statute providing that any lessor of any motor vehicle should be liable for personal injury or property damage caused by the operation of the rented vehicle. An automobile rented in Connecticut was involved in a collision in Massachusetts, and the lessor was held responsible for the resulting damages. Levy v. Daniels' U-Drive Auto Renting Co., 108 Conn. 333, 143 A. 163 (1928). The Connecticut Supreme Court held that Connecticut clearly had the power to regulate the contractual relations formed in Connecticut, and the contractual liability of the lessor followed the vehicle into Massachusetts or wherever it was driven by the lessee. This reasoning so impressed Judge Butzner of this court that he thought North Carolina would resolve a similar conflicts of laws question by applying New York's Sec. 388 when a New York vehicle, rented in New York, caused injury in North Carolina. Kline v. Wheels by Kinney, Inc., 464 F.2d 184 (4th Cir.1972) (Butzner, J., dissenting). He viewed it not as a matter of resolving conflicting tort law, but as a matter of enforcing a contractual obligation in accordance with the laws of the state in which the contract was made.
 
 
 36
 The integration of the first paragraph of Sec. 388 with New York's compulsory liability insurance laws strongly suggests that the New York legislature intended to regulate the relationships between motor vehicle owners and their lessees or permittees. Clearly New York's legislature has the power to prescribe the terms and coverages of the liability insurance required of the owners of all motor vehicles registered in New York. As long as the relationship was formed in New York, there would be no problem about the extra-territorial application of Sec. 388, when the vehicle involved was of New York registry. Such an approach might not settle the problem of the personal liability of a New York owner beyond the limits of his liability insurance, if permission to use the automobile was granted and accepted outside of New York State and the injury was inflicted outside of that state. Such contractual analysis, however, tends to reinforce our conclusion that New York's Court of Appeals would hold Sec. 388 inapplicable when the injury was sustained outside the state of New York, unless the offending vehicle was of New York registry or its owner, in using and operating the vehicle, was subject to plenary regulation by New York.
 
 
 37
 In this case, of course, the lease was executed in Florida, and New York had no interest in its formulation or terms.
 
 
 38
 New York would not employ the contract theory. It would use its interest analysis, but the fact that New York had no interest in the vehicle or the lease demonstrates its lack of predominant interest. Its interest in the plaintiff as a New York resident who suffered injury in another state is simply not enough to carry the day when the offending vehicle was registered in Michigan and rented in Florida to a Florida resident for a one-way trip to South Carolina.
 
 
 39
 AFFIRMED.