**Joseph J. TIERNAN, Jr., in his capacity as Administrator of the Estate of James E. Tiernan**

**v.**

**WESTEXT TRANSPORT, INC., Supervised Investors Services, Inc., Raymond West.**

**Joseph J. TIERNAN, Jr., in his capacity as Administrator of the Estate of James E. Tiernan**

**v.**

**Patricia DUNN, in her capacity as Administratrix of the Estate of Richard J. Dunn.**

**Civ. A. Nos. 3449, 3471.**

United States District Court
D. Rhode Island.

Feb. 6, 1969.

James M. Jerue, William C. Dorgan, Providence, R. I., for plaintiff.

Raymond A. LaFazia, Providence, R. I., for Westext Transport and Raymond West.

William A. Curran, Providence, R. I., for Supervised Investors.

Joseph A. Kelly, Providence, R. I., for Patricia Dunn, Admx.

OPINION

PETTINE, District Judge.

This is a motion to vacate orders of dismissal entered by this court on July 22, 1965 as to the first and second counts of the plaintiff administrator's complaints in C.A. Nos. 3449 and 3471.

■■ These two diversity suits arose out of an automobile accident on April 10, 1964 in Plainville, Massachusetts in which the plaintiff's decedent, a former resident and citizen of Rhode Island, was killed. Both suits were commenced in early 1965,[1] and in both suits the plaintiff stated causes of action under both the Rhode Island and Massachusetts wrongful death statutes. Because reference to those statutes may be necessary to the reader they are stated in full in an Appendix to this opinion. In C.A. No. 3449, one of the multiple defendants,[2]

---

1. The same plaintiff commenced identical actions against the same defendants in the federal courts of Massachusetts and New York one month after the commencement of these actions in Rhode Island. The New York court transferred its case to Massachusetts, and the Massachusetts court thereupon transferred both cases here. Consolidation of all these cases has been sought and granted. See accompanying decision.

2. The motion made by one of the multiple defendants in C.A. No. 3449 is not a motion by which all the defendants are controlled. Cf. Mantin v. Broadcast Music,

and in C.A. No. 3471, the single defendant, moved for dismissal as to the Rhode Island wrongful death claims. Those motions were predicated on the theory that Rhode Island's wrongful death statute could not be the basis for the plaintiff's claims, because Rhode Island conflict of laws principles required the application of the substantive law of the place of the wrong, here Massachusetts. The plaintiff opposed the motions on the basis that the Rhode Island Supreme Court, if given the opportunity, would apply the more modern conflict of laws principles by which Rhode Island substantive law would control. Because this court recognized the possibility that the Rhode Island Supreme Court might follow the current trend away from strict lex loci delicti, it invited and encouraged the parties to seek declaratory relief in the state courts in order to obtain an authoritative determination. After the parties' rejection of that suggestion, this court entertained and granted the defendant's motions to dismiss on July 22, 1965. However, the cases have continued in litigation to the present time because of

the vitality of the Massachusetts wrongful death causes of action. Moreover, in the interim the Rhode Island Supreme Court has reversed its prior conflict of laws principles in the area of torts involving multi-state contacts. Woodward v. Stewart, R.I., 243 A.2d 917 (July 9, 1968).

■ On the basis of the *Woodward* decision the plaintiff has moved to vacate the previous orders of dismissal. The plaintiff argues that the dismissals are not final and that, even if final, they can and should be vacated. Further, the plaintiff argues that the standards of *Woodward* as applied to the facts of this case mandate the application of Rhode Island's wrongful death law. The defendants respond by way of a two-fold argument. First, they claim that the previous dismissals are final judgments which could have been appealed within the prescribed period and, not having been so appealed cannot now be vacated at the trial level. Second, they argue that the Rhode Island wrongful death law is not the governing substantive law under *Woodward's* standards.[3]

Inc., 248 F.2d 530 (9th Cir. 1957), Noel v. Linea Aeropostal Venezolana, 260 F. Supp. 1002 at 1003, n. 7 (S.D.N.Y.1966). Thus, even if the instant motion to vacate were not granted, the dismissal of the Rhode Island wrongful death counts would be controlling only as to the moving defendant.

On oral argument it was made clear that the defendant Westext made a motion to dismiss counts 3 and 4 which was not acted upon by the court and has been pending. That motion is not now before the court.

3. The defendant Supervised, looking to the transfer here of the New York and Massachusetts cases, see note 1, supra, and citing Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1965), argues, additionally, that because Van Dusen requires the law of the transferor forum, including its conflicts law, to apply in the transferee forum, there is here a conflict between the more modern conflict of law rules of New York and Rhode Island, on the one hand, and the older, lex loci rules of Massachusetts, on the other. Supervised would

require the court to resolve the conflict of conflict of law rules before it resolves the conflict of wrongful death laws. Presumably, it is Supervised's hope that the Massachusetts rule of lex loci would be chosen, and that on the basis of that rule, counts 1 and 2 would have to remain dismissed.

However, for two reasons *Van Dusen* cannot be said to control here. First, that case involved the transfer of actions commenced by certain plaintiffs in one forum to another forum in which similar actions had been commenced by other plaintiffs against the same defendant. Because the causes of action there involved different plaintiffs, transfer and consolidation did not necessitate, as here, where the plaintiff, defendants, and causes of action are the same, either a merger of all the cases or a preference for one or the other. See accompanying decision and note 1, supra. Second, *Van Dusen* expressly left open the question of whether a transfer sought by a plaintiff would require that the law of the transferor forum be applied in the transferee forum. In cases such as this, little can be gained by holding that the law

### The Procedural Aspects of the Motion to Vacate

The defendants have argued that the prior dismissals of July 22, 1965 are final judgments and should not now be disturbed. 28 U.S.C. Sec. 1291 states that the courts of appeals have jurisdictional power over "final decisions" of the federal district courts. Where either multiple parties or multiple claims are involved the status of a particular decision at the trial level with respect to its finality, and hence, also, with respect to its appealability, is measured by Fed.R.Civ.P. 54(b). That rule of procedure requires an express determination by a district court that there is no just reason for delay and an express direction for the entry of judgment as the two-fold sine qua non for a final determination. Both of these requirements are lacking in each of the instant cases. In C.A. No. 3449, which is a multi-claim multi-party proceeding, one of the three named defendants moved for dismissal of two of the four alleged causes of action. The motion was granted. The court, however, refrained from either any express determination that there was no just reason for delay or any express direction for the entry of judgment. In C.A. No. 3471 which is a multi-claim, single defendant proceeding, the defendant moved for dismissal as to two of the four alleged causes of action. The motion was granted. Yet the court likewise failed to meet the requisites of Fed.R.Civ.P. 54(b) in that case. In addition, an even cursory reading of the transcribed minutes of the trial court judge both before and after his decision of July 22, 1965 indicates a complete absence of intent on his part to elevate the dismissals to the level of finality. For those reasons it must be concluded that the dismissals of July 22, 1965 were not final judgments and may, accordingly be reconsidered by this court. See Partin v. Hassin Motors, Inc., 363 F.2d 104, 105 (6th Cir. 1966); Gabbard v. Rose, 330 F. 2d 705 (6th Cir. 1964).

There is a further reason why this court should reconsider the dismissals of July 22, 1965, and that reason rests on principles of federalism established by the Supreme Court in Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) and elaborated in subsequent decisions of the Supreme Court

of the transferor forum comes with the transfer. Such a rule would promote intra-federal system forum shopping by plaintiffs which, while it is not the kind of forum shopping that offends basic concepts of federalism, see Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), can nevertheless prompt that kind of pre-trial jockeying for position which is so offensive to well-ordered judicial administration. Accordingly, the court holds that the Massachusetts and New York conflicts laws have not accompanied the transfers here. Even if *Van Dusen* is applicable here, it is questionable whether it creates any conflict of conflict of laws rules. The plaintiff has argued (1) that there is certainly no such conflict as between New York and Rhode Island, and (2) that there may not be any such conflict as between Massachusetts and Rhode Island, because it cannot be said on any broadside basis that Massachusetts adheres to lex loci but rather might, in the circumstances of this case, apply Rhode Island's wrongful death law. In the absence of any compelling Massa-

chusetts precedent directly dealing with this question, cf. Jackson v. Anthony, 282 Mass. 540, 185 N.E. 389 (1933), and in the absence of any necessity to reach it, the court declines to pass but merely sets out the argument for purposes of possible appeal.

Finally, even if *Van Dusen* is applicable here, and even if a conflict of conflict of laws rules is thereby created, that conflict can be resolved. As has been indicated in the court's decision on the issue of consolidation, when the suits to be consolidated involve the same plaintiff, defendants, and causes of action, it is necessary either to merge them into a new proceeding or to hold that one of the suits is, for some reason, the better of the suits and hence survives as the action to be tried. In this case, where the Rhode Island cases survived and became the cases to be tried, it must be held that Rhode Island choice of law rules control. See: Erie R. R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817 (1938), Klaxon Co. v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

and the First Circuit Court of Appeals. In Vandenbark v. Owens-Illinois Glass Co., 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327 (1940) a plaintiff's cause of action in tort was dismissed, upon motion of the defendant, by the federal trial court on the basis that Ohio law banned recovery. While the case was on appeal the Supreme Court of Ohio changed the law and ruled that a person in the position of the plaintiff in *Vandenbark* did have a cause of action. The Supreme Court remanded the case to the federal district court and stated at p. 543, 61 S.Ct. at p. 350:

> "These instances indicate that the dominant principle is that nisi prius and appellate tribunals alike should conform their orders to the state law as of the time of the entry (of their orders). Intervening and conflicting decisions will thus cause the reversal of judgments which were correct when entered.

> " * * * we are of the view that, until such time as a case is no longer subjudice, the duty rests upon federal courts to apply state law under the Rules of Decision statute in accordance with the then controlling decision of the highest state court. Any other conclusion would but perpetuate the confusion and injustices arising from inconsistent federal and state interpretations of state law."

Hence it is the clear holding of *Vandenbark* that "the law of the case" may be modified by a change in state law during the pendency of the case on appeal. A fortiori a change in state law during the pendency of the case at the trial level merits a similar modification.

In Commerce Oil Refining Corp. v. Miner, 303 F.2d 125 (1st Cir. 1962) the First Circuit indicated that " * * * the district court's decision would be subject to change even after it became final within the conventional sense and was pending on appeal. A decision on pertinent state law is to be welcomed at any time."

■ In the instant case, therefore, the Rhode Island Supreme Court's change from lex loci to center of gravity, grouping of contracts, and interest analysis principles of conflict of laws requires the court to vacate its previous dismissals and to consider whether the principles of conflict of laws enunciated in *Woodward* warrant the application of Rhode Island substantive law.

### The Conflict of Laws Question

■ A statement of those facts necessary to the court's ruling on the application of *Woodward* requires first a clarification of the procedural posture of the case at this time. In effect, the court's decision to reach the merits of the choice of laws question revives the defendants' previous motions to dismiss. However, both the plaintiff and the defendants have, in their choice of law arguments, alluded to facts gleaned from lengthy pre-trial discovery. Hence, the court could treat this motion as one for summary judgment. And yet, because pre-trial has not been completed, summary judgment at this juncture seems premature and would precipitate considerable unnecessary scrutiny of the various pre-trial materials. Accordingly these motions will be treated, with respect to the choice of laws question, as defendants' motions to dismiss the plaintiff's complaints.

On this basis, the undisputed facts are as follows. On April 10, 1964 the plaintiff's decedent, a citizen and resident of Rhode Island, was seriously injured in a highway accident in Plainville, Massachusetts. The plaintiff's decedent was riding in the automobile of one Richard J. Dunn, a citizen and resident of New York and an employee, then acting in the course of his employment, of Supervised Investors Services, Inc., a Delaware Corporation with its principal place of business outside Rhode Island. The Dunn vehicle was struck by a tractor-trailer owned and operated by the Westext Transport Co., Inc., a Texas Corporation with its principal place of business outside Rhode Island. The tractor-trailer was driven by one Raymond West, a citizen and resident of Vermont and an

**1262**

employee of Westext then acting in the course of his employment. The accident was allegedly caused by the negligence of either Dunn or West or both, and vicariously, by either Supervised or Westext, respectively, or both. Shortly after, and as a consequence of the accident and his injuries, Tiernan, who had left Rhode Island earlier on the 10th and was returning thereto at the time of the accident, died in Rhode Island.

The plaintiff administrator is a Rhode Island citizen and resident, as are the decedent's wife and family, for whose benefit this action is brought. The defendant administratrix in C.A. No. 3471, who is now a citizen and resident of Massachusetts, was, at the time of the accident, a citizen and resident of New York, where she was appointed administratrix and where the decedent Dunn's estate is being probated.

In Woodward v. Stewart, R.I., 243 A. 2d 917 (July 9, 1968) a Rhode Island citizen and resident riding in the vehicle of another Rhode Island citizen and resident was killed in Seekonk, Massachusetts in an accident with a vehicle owned by still another Rhode Island citizen and resident and operated, with the consent of the latter, by yet a fourth Rhode Island citizen and resident. The parties in the Stewart vehicle had begun their trip in Barrington, Rhode Island, to which they were returning after a dinner engagement in Newport, Rhode Island, when the accident occurred. On appeal from the trial court's dismissal of the decedent guest's administrator's case against the host-driver, the Rhode Island Supreme Court, reversing all previous law to the contrary, held that in those circumstances the wrongful death law of Rhode Island should be the governing substantive law with respect to the legal relationship between the parties in the Stewart vehicle, the liability arising from that relationship, and the damages recoverable for such liability. The court further noted that Massachusetts law should govern with respect to the wrongful conduct of the parties.

Because of the factual differences between *Woodward* and the instant case it cannot be said that *Woodward* controls this case in every respect.[4] The importance of *Woodward* is not so much its specific holding but rather its recognition that Rhode Island's wrongful death laws can be applied extraterritorially and its adoption of a defined but flexible methodology of choice of laws. As this court perceives that methodology, it requires a four-step analysis: (1) what factual contacts are there with the states whose laws are alleged to conflict; (2) what is the nature of the conflict between the laws of those states whose contacts are minimally sufficient constitutionally to allow application of their laws; (3) what are the interests to be considered in choosing the applicable law; (4) weighing those interests, what law should be applied.[5]

4. Here, unlike *Woodward*, there is no indication that the plaintiff's decedent originally left Rhode Island with any of the defendants. Nor are the defendants here Rhode Island citizens and residents.

5. Because of the somewhat unique fact pattern of this case, the court has decided not to place any substantial reliance on mildly analogous cases where the grouping of contacts approach has been applied in wrongful death cases. It should be noted, however, that such cases do exist and have been considered by the court. See, e.g., Kilberg v. Northeast Airlines, Inc., 9 N.Y.2d 34, 211 N.Y.S.2d 133, 172 N.E.2d 526 (1961), Fabricius v. Horgen, 257 Iowa 268, 132 N.W.2d 410 (1965), Long v. Pan American World Airways, 16 N.Y.2d 337, 266 N.Y.S.2d 513, 213 N.E.2d 796 (1965), Griffith v. United Air Lines, Inc., 416, Pa. 1, 203 A.2d 796 (1964), Marmon v. Mustang Aviation, Inc., Tex., 430 S.W.2d 182 (1968), Hopkins v. Lockheed Aircraft Corp., Fla., 201 So.2d 743 (1967), Gore v. Northeast Airlines, Inc., 373 F.2d 717 (2d Cir. 1967), Ciprari v. Servicos Aereos Cruzeiro, 245 F.Supp. 819, affd. per curiam, 359 F.2d 855 (2d Cir. 1966), Tramontana v. S. A. Empresa De Viacao Aerea Rio Grandense, 121 U.S.App.D.C. 338, 350 F.2d 468 (1965), cert. den. 383 U.S. 943, 86 S.Ct. 1195, 16 L.Ed.2d 206 (1966), Watts v. Pioneer Corn Co., 342 F.2d 617 (7th

## STEP 1

In the instant case, it is alleged that there is a conflict between the wrongful death laws of Rhode Island and those of Massachusetts. The Rhode Island contacts are that the decedent was a citizen and resident of Rhode Island, that he left Rhode Island and was returning thereto at the time of the accident, that his death actually occurred in Rhode Island, that the decedent's administrator, the plaintiff in this action, was and is a citizen and resident of Rhode Island, and that the wife and children of the decedent, who are the exclusive beneficiaries for whom this action is brought, were and are Rhode Island citizens and residents. The Massachusetts contacts are that the accident happened there and that the defendant administratrix, the wife of the decedent driver, is now a citizen and resident of Massachusetts.

## STEP 2

Both Massachusetts and Rhode Island have created statutory causes of action for death. The respective statutes differ in several respects. In particular the following conflicts are especially important; (1) Massachusetts pattern of distribution differs slightly from Rhode Island's; (2) Massachusetts places a maximum of $50,000 and a minimum of $5000 on recovery, while Rhode Island's maximum is unlimited and its minimum is $3000; (3) Massachusetts' statute is penal in nature, that is, it focuses not on the actual loss of the plaintiff but rather on the degree of culpability of the defendant, while Rhode Island's statute is compensatory in that it focuses on the loss to the plaintiff.

## STEP 3

Woodward v. Stewart, supra, sets out the various interests to be defined and weighed in a conflicts situation such as this. These interests include (1) predictability of results, (2) maintenance of interstate order, (3) simplification of the judicial task, (4) advancement of the forum's governmental interests, and (5) application of the better rule of law. In the circumstances of this case, certain of these interests are more relevant than others.

Because of the high degree of fortuity in accident cases, predictability of result is of little consequence. It would be an absurdity for any defendant to argue that he chose the state of the wrong in order to be sued under the law of that state. And the multi-state contacts of all the defendants in this case militate against any genuine contention that insurance rates for any of the defendants were premised on recovery limitations.

The court next considers the maintenance of interstate order. A firm desire to render to a non-forum state what properly belongs to that state invites consideration of Massachusetts' interests in the application of its law in the circumstances of this case. The fact that the Massachusetts wrongful death statute focuses on defendants' culpability would seem to indicate a deterrent purpose in its law. Those who use the Mas-

Cir. 1965), Pearson v. Northeast Airlines, Inc., 309 F.2d 553, 92 A.L.R.2d 1162 (2d Cir. 1962) (en banc), Turner v. Capitol Motors Trans. Co., 214 F. Supp. 545 (D.Me.1963), Duffy v. Currier, 291 F.Supp. 810 (D.Minn.1968), Satchwill v. Vollrath, 293 F.Supp. 533 (E.D.Wis.1968).

Instead the court has decided to analyze this case under the *Woodward* standard and in the light of the materials upon which the Rhode Island Supreme Court relied, i.e., Heath v. Zellmer, 35 Wis.2d 578, 151 N.W.2d 664 (1967), Clark v. Clark, 107 N.H. 351, 222 A.2d

205 (1966), Cavers, The Choice of Law Process (1965), Leflar, Choice Influencing Considerations in Conflicts of Law, 41 N.Y.U.L.Rev. 267 (1966), Leflar, Conflicts Law: More on Choice-Influencing Considerations, 54 Calif.L.Rev. 1584 (1966), Cheatham & Reese, Choice of the Applicable Law, 52 Colum.L.Rev. 959 (1952), and in the light of a more recent decision which illuminates especially well the ideological tension in this area of the law, Miller v. Miller, 22 N. Y.2d 12, 290 N.Y.S.2d 734, 237 N.E.2d 877 (1968).

# 1264

sachusetts roads in a careless manner and thereby cause the death of others will be held liable in amounts commensurate with the gravity of their negligence. The greater the carelessness, the greater the damages, even if the actual loss is minimal. At the same time, however, the ceiling on recovery in the Massachusetts law indicates a purpose at least somewhat at odds with the deterrent purpose attributed to the statute's punitive nature. The purpose is the protection of Massachusetts citizens from large recoveries in death cases. In this case, it would appear that the Massachusetts law can accomplish only its deterrent purpose, since none of the defendants is a Massachusetts citizen[6] and hence all are beyond the statute's reach.

■■■ Only in those cases in which foreign law is either very complex or very obscure will simplification of the judicial task be a weighty consideration. Where, as here, the two conflicting laws are equally ascertainable and applicable statutory rules, this interest factor cannot be of great importance.

■■■ The ascertainment of Rhode Island's governmental interest is not difficult. The Rhode Island wrongful death laws indicate their purpose to compensate Rhode Island citizens for the loss of their family support. This interest rests on two separate rolls of the state. As parens patriae the state seeks, often in a partial manner, to protect its citizens. Also, as the family supporter of last resort, the state seeks to protect its fisc by shifting losses onto other persons or entities. In this case, both functions of the state must be said to be at work. The plaintiff is the Rhode Island administrator of a Rhode Island citizen's estate seeking benefits for a Rhode Island wife and

family. And nothing appears in the pleadings to indicate what other means have been provided to support this wife and family.

■■■ The final question to be considered is which rule of law is the better one. Of this there can be little doubt. Without discoursing at great length, it can be said that wrongful death limitations serve little purpose. So strong has been the reaction to such limitations that some courts have upheld the application of the wrongful death law of non-forum states but have at the same time disallowed the limitation of those laws on public policy grounds. See Kilberg v. Northeast Airlines, 9 N.Y.2d 34, 211 N.Y.S.2d 133, 172 N.E.2d 526 (1961), Pearson v. Northeast Airlines, 309 F.2d 553 (2d Cir. 1962). For a general criticism, which this court adopts, of wrongful death limitations and of the Massachusetts punitive statute see Speiser, Recovery for Wrongful Death Sec. 3.3 at pp. 71–72, Sec. 7.4 at pp. 491–493 (1966 ed.).

## STEP 4

■■■ The weighing of interests in this case is a bit more complex task than that of the court in *Woodward* but not as troublesome as could be imagined. Focusing on Massachusetts, it must be concluded that its interests are limited. Massachusetts' only genuinely relevant contact is that the accident, from which the plaintiff's decedent died, occurred there. Given that contact, it is questionable whether any Massachusetts' interest would be furthered by the application of Massachusetts law. There is no Massachusetts defendant to be protected by the statute's recovery limitation, and it can hardly be supposed that deterrence

6. At the time of the happening of the accident the defendant Dunn's decedent and the defendant Dunn were citizens and residents of New York, where the defendant's decedent's estate is being probated. By the time of the commencement of this action the defendant Dunn had moved to Massachusetts and become a Massachusetts citizen and resident. However, the court concludes that the date of the accident is the relevant date for purposes of analysis of the Massachusetts interest in protecting its citizens. Moreover, the real defendant here is the decedent's estate and not the defendant personally. Because the estate is a New York one, the Massachusetts interest is not applicable. Cf. Gore v. Northeast Airlines, Inc., 373 F.2d 717 (2d Cir. 1967).

of recklessness on the Massachusetts highways will result from the imposition of a $50,000 ceiling in a case in which over $450,000 is sought. On the other hand, Rhode Island's interest in compensation as both parens patriae and family supporter is furthered by the application of Rhode Island substantive law. In addition, there can be little argument that compensatory wrongful death statutes are preferred to their punitive counterparts. Thus, the court holds that Rhode Island General Laws §§ 10–7–2, 5, as amended, 1956, are the controlling substantive laws.[7] The plaintiff's motions to vacate are granted.

## APPENDIX

The following statutory law of Rhode Island and Massachusetts dealing with actions for wrongful death is referred to by the court.

Mass.G.L. ch. 229 Sec. 2 states:

"Damages for Death by Negligence, etc.; General Provisions A person who (1) by his negligence causes the death of a person in the exercise of due care, or (2) by wilful, wanton or reckless act causes the death of a person under such circumstances that the deceased could have recovered damages for personal injuries if his death had not resulted, or (3) operates a common carrier of passengers and by his negligence causes the death of a passenger, or (4) operates a common carrier of passengers and by his wilful, wanton or reckless act causes the death of a passenger under such circumstances that the deceased could have recovered damages for personal injuries if his death had not resulted, shall be liable in damages in the sum of not less than five thousand nor more than fifty thousand dollars, to be assessed with reference to the degree of his culpability and distributed as provided in section one; except that (1) the liability of an employer to a person in his employment shall not be governed by this section, (2) a person operating a railroad shall not be liable for negligence in causing the death of a person while walking or being upon such railroad contrary to law or to the reasonable rules and regulations of the carrier, and (3) a person operating a street railway or electric railroad shall not be liable for negligence for causing the death of a person while walking or being upon that part of the street railway or electric railroad not within the limits of a highway. A person shall be liable for the negligence or the wilful, wanton or reckless act of his agents or servants while engaged in his business to the same extent and subject to the same limits as he would be liable under this section for his own act, except that the damages shall be assessed with reference to the degree of culpability of his agents or servants. Damages under this section shall be recovered in an action of tort by the executor or administrator of the deceased. No recovery shall be had under this section for a death which does not occur within two years after the injury which caused the death. An action to recover damages under this section shall be commenced within two years from the date of death or within such time thereafter as is provided by sections four, four B, nine or ten of chapter two hundred and sixty."

Mass.G.L. ch. 229 Sec. 1 states, in pertinent part:

" * * * to the use of the following persons and in the following shares:— (1) if the deceased shall have been survived by a wife or husband and no children or issue surviving, then to the use of such surviving spouse. (2) If the deceased shall have been survived by a wife or husband and by one child or by the issue of one deceased child, then one half to the use of such surviv-

---

7. Rhode Island law controls, therefore, as to the creation and nature of the cause of action and the damages recoverable. If, however, it should develop that there is a conflict between Massachusetts and Rhode Island law as to what constitutes negligent conduct, under *Woodward*, Massachusetts law would control.

ing spouse and one half to the use of such child or his issue by right of representation. (3) If the deceased shall have been survived by a wife or husband and by more than one child surviving either in person or by issue, then one third to the use of such surviving spouse and two thirds to the use of such surviving children or their issue by right of representation.

(4) If there is no surviving wife or husband, then to the use of the next of kin.

R.I.G.L. Sec. 10–7–1 states:

"Liability for damages for causing death.—Whenever the death of a person shall be caused by the wrongful act, neglect, or default of another, and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, the person who, or the corporation which, would have been liable if death had not ensued shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to a felony."

R.I.G.L. Sec. 10–7–2 states:

"Action by executor or administrator —Persons benefited—Commencement of action—Minimum recovery.—Every such action shall be brought by and in the name of the executor or administrator of such deceased person, whether appointed or qualified within or without the state, and the amount recovered in every such action shall be one-half (½) thereof go to the husband or widow, and one-half (½) thereof to the children of the deceased, and if there be no children the whole shall go to the husband or widow, and, if there be no husband or widow, to the next of kin, in the proportion provided by law in relation to the distribution of personal property left by persons dying intestate. Provided, that every such action shall be commenced within two (2) years after the death of such person; and provided, further, whenever any person or corporation is found liable under §§ 10–7–1 to 10–7–4, inclusive, he or it shall be liable in damages in the sum of not less than five thousand dollars ($5,-000)."