**ROYAL INDUSTRIES LIMITED,**
**Plaintiff,**

v.

**KRAFT FOODS, INC., Defendant.**

**No. 94 Civ. 9334 (CSH).**

United States District Court,
S.D. New York.

May 21, 1996.

Heller, Horowitz & Feit, P.C., New York City (Eli Feit, Stuart Blander, of counsel), for Plaintiff.

Kensington & Ressler P.C., New York City (Michael J. Venditto, David G. Mallen, of counsel), for Defendant.

### MEMORANDUM OPINION AND ORDER

HAIGHT, Senior District Judge:

This action arises out of an alleged contractual arrangement, under which defendant, a U.S. food manufacturer, allegedly agreed to supply plaintiff, a food distributor in U.S. and abroad, with a specified quantity of assorted coffees. Plaintiff claims that defendant breached its supply obligations under the agreement, causing plaintiff monetary and reputational harm.

Presently before the Court are defendant's motion to dismiss pursuant to Rule 19(b), Fed.R.Civ.P., for failure to join an indispens-

able party and on the ground of *forum non conveniens,* and plaintiff's cross-motion for partial summary judgment. For the reasons that follow, I deny both motions.

## I.

Plaintiff, Royal Industries Limited (hereinafter "Royal"), is incorporated under the laws of the Republic of the Marshall Islands, and has its principal place of business in South Plainfield, New Jersey. According to the complaint, its business is "food brokerage": it purchases food products in bulk and resells them to U.S. and international customers.

Defendant Kraft Foods, Inc. ("Kraft"),[1] a Delaware corporation with its principal place of business in Northfield, Illinois, is one of the largest manufacturers and marketers of food products in the United States. Several of its products are sold abroad. Kraft Jacobs Suchard, A.G. ("KJS"), a Swiss corporation wholly owned by Kraft, is responsible for marketing and selling Kraft products in Europe.[2] One of KJS's subsidiaries, an Austrian corporation named Suchard Schokolade Ges.m.b.h. ("Suchard"), markets Kraft products throughout Eastern Europe.[3] When a European buyer negotiates the purchase of a Kraft-branded product with KJS or one of its subsidiaries, Kraft Foods International ("KF International"), an unincorporated division of Kraft headquartered in Rye Brook, New York, supplies the product to the buyer.

On five separate occasions between January 1993 and July 1994, Royal purchased Kraft products for subsequent resale in Eastern Europe. The mechanics of each purchase were, in large part, the same. After being informed by Suchard[4] of the availability of a Kraft product, Royal would place an order with Suchard for a specific quantity. Suchard would then forward the order to KF International's offices in New York. Upon receipt of the order, KF International would issue a *"pro forma* invoice," certifying the price and quality of the goods to be sold. Once Royal tendered payment, KF International would arrange for shipment of the product to Royal (or its customers in Russia).

In August of 1994, Royal and Suchard once again negotiated for the sale of a Kraft product, this time, flavored coffee. The negotiations were accomplished via facsimile. In a fax dated August 23, 1994, an employee of Suchard, Olga Ladorenko, informed Royal that several flavors of Kraft-brand coffee were available for purchase, and requested a prompt response. A flurry of faxes were subsequently exchanged, in which Suchard and Royal discussed the quantity of each flavor that was available. Ultimately, Suchard and Royal settled upon an arrangement whereby Royal would purchase five containers[5] a month through the end of 1994 for a total purchase price of $1,600,000. Royal would then resell these containers to two of its Russian customers, J.V. Star Trading, Ltd. and Progress Co. According to the complaint, Royal expected to garner approximately $400,000 in profits from the resale transactions.

In a fax transmitted on September 12, 1994, Suchard informed Royal that its order had been "processed and sent to the States," and that Suchard had requested *pro forma* invoices from KF International's offices in Rye Brook, New York. Suchard promised to send Royal the *pro formas* as soon as it received them. However, the present record indicates that Kraft did not send the *pro forma* invoices to either Suchard or Royal, as

1. Plaintiff named "Kraft General Foods, Inc." in the complaint. Kraft has since changed its name to "Kraft Foods, Inc." Declaration of James C. Ko at ¶ 1.

2. KJS also produces its own branded products and markets them throughout Asia and Europe.

3. Suchard also markets KJS branded products throughout Eastern Europe.

4. Plaintiff states in its Rule 3(g) statement that KJS, not Suchard, negotiated each sale. Kraft, however, insists that Suchard negotiates all sales in Eastern Europe, including those to plaintiff. For purposes of this motion, I will assume that Kraft is correct in describing the responsibilities of its own subsidiaries. However, whether it was KJS or Suchard that negotiated the sale has no bearing on the outcome of the instant motions.

5. The parties do not specify how much coffee is in a "container", but it appears from the purchase price to be a substantial quantity.

it had in the prior five transactions. In addition, Royal never tendered payment to Kraft, and Kraft never supplied the goods to Royal.

Based on these facts, plaintiff commenced the present breach of contract action against Kraft, asserting diversity of citizenship as the basis for jurisdiction. The complaint alleges that the exchange of faxes bound Kraft to supply the requisite quantity of coffee to Royal; that Royal was "ready, willing and able to perform all of its obligations under the Sales Agreement, including payment of the full purchase price to defendant prior to shipment by defendant of the goods"; that Royal had commitments from purchasers in Russia to buy the goods at a substantial markup; and that Kraft breached the agreement by refusing to sell the coffee. Plaintiff requests compensatory damages in the amount of $400,000 to reimburse it for lost profits, and an additional unspecified amount to compensate it for reputational harm caused by the alleged breach. In addition, plaintiff seeks $500,000 in punitive damages.

Kraft now moves to dismiss the complaint on *forum non conveniens* grounds, alternatively claiming that Suchard is an indispensable party under Rule 19(b) whose joinder would destroy this Court's diversity jurisdiction. Royal cross-moves for summary judgment on the issue of liability, asserting that there is no genuine issue as to either the existence of an agreement between Kraft and Royal.

## II.

### A. *Partial Summary Judgment*

I consider Royal's motion for partial summary judgment at the outset, since it gives rise to issues that impact upon Kraft's motion.

Under Fed.R.Civ.P. 56(c), the moving party is entitled to summary judgment if the papers "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." On such a motion, "a court's responsibility is to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable infer-

ences against the moving party." *Coach Leatherware Co., Inc. v. AnnTaylor, Inc.*, 933 F.2d 162, 167 (2d Cir.1991) (citing *Knight v. U.S. Fire Insurance*, 804 F.2d 9 (2d Cir. 1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987)) (citation omitted). The responding party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "The non-movant cannot 'escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts,' ... or defeat the motion through 'mere speculation or conjecture.'" *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (citations omitted). While the party resisting summary judgment must show a dispute of fact, it must also be a material fact in light of the substantive law. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

In moving for partial summary judgment, Royal claims that there is no genuine issue as to a existence of a binding contract between itself and Kraft. In Royal's view, Suchard, the entity with whom it negotiated, is merely a sales agent, and Kraft its principal. Thus, all actions taken by Suchard were taken on behalf of Kraft, and Kraft was bound by the "sales agreement" memorialized in the exchange of faxes.

Kraft resists summary judgment by distancing itself from Suchard. According to Kraft, Suchard is not a sales agent; it is an entity that negotiates the sale of Kraft goods on behalf of itself. Once Suchard negotiates a sale agreement, the order is forwarded to KF International. KF International supplies the goods to Suchard's customers, but only after it has independently expressed its willingness to do so by forwarding *pro forma* invoices to the buyer. In a sense, then, the *pro forma* invoice constitutes an offer to sell on the part of Kraft, which the buyer can accept by forwarding payment. Since no *pro forma* invoices were sent in this case, Kraft claims that it had no independent obligation to supply the coffee. If any obligation exist-

ed, it was owed by Suchard and Suchard alone.

■ This dispute gives rise to a threshold issue: whether and in what circumstances a parent corporation may be held accountable for the acts of its subsidiary on an agency theory of liability under the law of New York.[6] Neither party addresses this question in its papers, but independent research has revealed that it requires attention.

In *Kashfi v. Phibro–Salomon, Inc.,* 628 F.Supp. 727 (S.D.N.Y.1986), the district court held that "[t]he test for determining whether a corporation is acting as an agent for a related corporation is the same as the test imposed under the doctrine of piercing the corporate veil." *Id.* at 735. Thus, in the court's view, for a claim styled in agency terms to lie against a parent corporation, the plaintiff must demonstrate that the parent dominated the subsidiary, and that such domination was used to commit a wrong or fraud against the plaintiff. *See Morris v. New York State Dept. of Taxation and Finance,* 82 N.Y.2d 135, 603 N.Y.S.2d 807, 623 N.E.2d 1157 (1993) (stating the standard for piercing the corporate veil). To apply a different standard, the *Kashfi* court reasoned, would "undermine the strong policy that exists concerning the presumption of [corporate] separateness." 628 F.Supp. at 735.

Were I to apply the rule of *Kashfi* to the present case, it would warrant a *sua sponte* grant of summary judgment in favor of defendant. *See Project Release v. Prevost,* 722 F.2d 960, 969 (2d Cir.1983) (district court has power to grant summary judgment *sua sponte*). Plaintiff has not alleged facts which tend to demonstrate that Kraft dominated KJS or Suchard or used their corporate shells to perpetrate a fraud. However, in my view, the *Kashfi* doctrine, which effectively precludes suit against a parent corporation based on ordinary principles of agency, is too restrictive. Therefore, I decline to apply it.

■ Suing a parent corporation on an agency theory is quite different from attempting to pierce the corporate veil. In the first instance, the claim against the parent is premised on the view that the subsidiary had

authority to act, and was in fact acting, on the parent's behalf—that is, in the *name* of the parent. That is precisely what Royal alleges in this case: Royal claims that Suchard was negotiating sales in Eastern Europe on behalf of Kraft. In the latter situation, the putative plaintiff does not dispute that the underlying obligation belongs to the corporate subsidiary; however, he seeks to hold the parent liable on the theory that the parent fraudulently induced the subsidiary to incur the obligation. The Reporter for the *Restatement (Second) of Agency* recognizes the important distinction between these two theories of liability:

> It is useful to distinguish situations in which liability is imposed on a parent because of the existence of an agency relation, in our common-law understanding of that relation, from cases in which the corporate veil of the subsidiary is pierced for other reasons of policy. Unfortunately, however, the courts have not always observed the distinction between these two separate bases for parent's liability. When liability is fastened upon the parent it is said that the subsidiary is a "mere agent." The result has been a weakening and muddying of the term "agent" and a failure by courts to state the real reasons for their decisions.

*Appendix,* § 14M, Reporter's Notes at 68 (1958); *Accord Japan Petroleum (Nigeria) Ltd. v. Ashland Oil,* 456 F.Supp. 831, 840 (D.Del.1978).

The *Kashfi* court cites *Fidenas AG v. Honeywell Inc.,* 501 F.Supp. 1029 (S.D.N.Y. 1980), in support of its holding. However, I do not think the court in *Fidenas* intended to paint with such a broad brush and entirely eradicate the agency theory of liability in the parent-subsidiary context. There, the district court stated:

> The tests for finding agency so as to hold a parent corporation liable for *the obligations of its subsidiary* ... are virtually the same as those for piercing the corporate veil.

*Id.* at 1037 (emphasis added). The distinction between the language of *Kashfi* and that

---

6. For reasons that I explain below, New York law governs the present action.

of *Fidenas* is subtle but important. *Kashfi* precludes all claims against a parent based on ordinary principles of agency, no matter what the circumstance. The language of *Fidenas*, on the other hand, only precludes claims against a parent when, in form, the underlying obligation belongs to the subsidiary. Put another way, *Fidenas* prevents a putative plaintiff from making an end run around the "piercing the corporate veil" doctrine by styling its claim in agency terms.

The doctrine I espouse in this opinion boils down to a very simple concept: just as one corporation can hire another to act as its agent, a parent can commission its subsidiary to do the same. If such an agency arrangement is alleged, then the plaintiff should not have to also allege domination and intent to defraud for the claim to survive. The parent-principal should not be allowed to escape liability simply because it owns stock in the subsidiary-agent.[7] Rather, as in any agency case, the issue should be one of authority: did the subsidiary have authority, actual or apparent, to act on behalf of the parent? As another court in this district has put it, "a parent corporation may become a party to its subsidiary's contract under an agency theory if the parent's conduct manifests an intent to be bound by the contract." *Oy Noresin AB v. ICC Industries, Inc.*, 1991 WL 161367 (S.D.N.Y.).

Contrary to the view of the *Kashfi* court, this rule will not undermine jealously safeguarded notions of corporate separateness. The theory behind any such agency claim is that the subsidiary's acts were, in both form and substance, those of the parent. Thus, there is no veil to pierce—the parent is the only party in interest.

■ Having found that Royal may invoke principles of agency in asserting its claim, I

must now consider whether summary judgment is warranted on the issue of Kraft's liability. If there is a genuine issue of fact as to the existence of an agency relationship between Kraft and Suchard, summary judgment is inappropriate.

On the present record, it appears as if Suchard's primary responsibility was to negotiate sales agreements with customers in Eastern Europe or intermediaries such as Royal who in turn sold Kraft products to these customers. Suchard had little or no involvement in the performance of these agreements: the buyer made payment directly to KF International and KF International supplied the product directly to the buyer. In form at least, this arrangement between Kraft and Suchard—that is to say, the way in which the two corporations divided responsibility—seems to resemble the prototypical principal-agent relationship. However, Kraft submits an affidavit by Mary Beth Lonegan, KF International's Logistics Manager for Central and Eastern Europe, who insists that Kraft and Suchard are distinct contracting entities. She states:

> Since KF International transacts business only with the applicable foreign distributors, subsidiaries, affiliates and sales agencies, it does not enter into any agreements with purchasers in these foreign countries. That is the sole responsibility of the distributor, subsidiary, affiliate or sales agency located in that country. That is precisely the circumstances [sic] in the alleged agreement Plaintiff claims to have entered into in Russia with the foreign sales agency in Moscow.

Reply Declaration of Mary Beth Lonegan at ¶ 4. She goes on to explain:

> If KF International sells [a] Kraft product to a foreign customer, it does so only after: (i) KF International has issued a *pro for-*

---

7. In coming to my conclusion, I note a relatively recent Second Circuit decision which rejected a district court's application of *Kashfi* to a claim alleging an agency relationship between two "unrelated" corporations. *See Itel Containers v. Atlanttrafik Exp. Service Ltd.*, 909 F.2d 698 (2d Cir.1990). In *Itel*, the Second Circuit explained that "the *Kashfi* court ... enunciated [its] standard for determining agency relationships as they might exist between related corporations, *i.e.*, those with overlapping shareholders, offi-

cers, or directors." *Id.* at 702. Because the case before the court concerned two "unrelated" corporations, the court found it unnecessary to consider the validity of the *Kashfi* doctrine. *See id.*

The court went on to apply a traditional agency analysis in determining whether one corporation acted as the other, unrelated corporation's agent. *See id.* at 702–03. As the text of this opinion indicates, I am of the view that this same analysis should be applied regardless of whether the principal and agent are related.

*ma* invoice to the foreign purchaser, and, (ii) the foreign purchaser has paid the invoiced amount either in cash or by the posting of an acceptable letter of credit. In essence, the issuance of our *pro forma* invoice is an offer to sell an identified quantity of product at an agreed upon price; the offer can be accepted only by paying the amount specified in the invoice.

*Id.* at ¶ 8.

Although Lonegan refers to Suchard as a "sales agency," her declaration nevertheless gives rise to a genuine issue of material fact. Regardless of the terminology she employs, Lonegan clearly views Suchard as a separate contracting entity that acts solely on behalf of itself and has no authority to act on behalf of Kraft. If, as Lonegan attests, the *pro forma* invoices constitute offers to sell, that would tend to support her view. Suchard would not have actual authority to extend a valid offer, since only KF International could send the *pro forma* invoice.

In light of Lonegan's position within KF International, and her experience in dealing with Eastern European affiliates, I am unwilling to conclude as a matter of law that Suchard was a mere sales agent for Kraft. Accordingly, plaintiff's motion for summary judgment is denied.

### B. *Rule 19*

■ I now turn to defendant's motion to dismiss pursuant to Rule 19(b). Defendant claims that Suchard is an "indispensable" party within the meaning of that provision whose joinder would destroy the Court's diversity jurisdiction.

Rule 19(a) provides the starting point for any "compulsory joinder" analysis. Under Rule 19(a), certain persons must be joined "if feasible," that is, if they are subject to service of process and their joinder would not deprive the federal court of jurisdiction. A person is "necessary" in this sense if

(1) in the person's absence complete relief cannot be accorded to those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reasons of the claimed interest.

Fed.R.Civ.P. 19(a). If joinder of a necessary party would destroy jurisdiction, the court must "determine whether in equity and good conscience" that party is "indispensable," so that the action should be dismissed. Fed. R.Civ.P. 19(b).[8]

Kraft bases its argument for dismissal under Rule 19(b) on its view that Suchard, not Kraft, contracted with Royal. According to Kraft, this makes Suchard "indispensable," presumably because any judgment rendered in its absence would be inadequate. Kraft goes on to argue that Suchard is a foreign corporation whose joinder would deprive the Court of jurisdiction. Thus, in plaintiff's view, Rule 19(b) compels dismissal.

The assumption upon which defendant's argument rests—that Suchard was the contracting party—is at odds with the theory underlying plaintiff's claim. As I have already discussed, the complaint is premised on the view that Suchard was Kraft's sales agent, and alleges that Kraft breached its own contractual obligations. Plaintiff does not assert any independent wrongdoing on the part of Suchard.

■ Given the substance of plaintiff's allegations, Suchard cannot be considered necessary under Rule 19(a), much less indispensable under Rule 19(b). Suchard does not claim an interest in this action, and therefore does not fall within the terms of Rule

---

8. Rule 19(b) sets forth the following four factors for the court to consider in making this determination:

[F]irst, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

19(a)(2). In addition, if plaintiff establishes an agency relationship and ultimately prevails at trial, it can obtain complete relief whether or not Suchard is a party defendant. Indeed, as an agent, Suchard could not be held liable for the breach. "When an agent makes a contract for a disclosed principal, it becomes neither a party to the contract nor liable for the performance of the contract." *Seguros Banvenez S.A. v. S/S Oliver Drescher,* 761 F.2d 855, 860 (2d Cir.1985). Thus, Rule 19(a)(1) is also inapplicable.

Clearly, under plaintiff's theory of liability, Suchard does not come within the ambit of Rule 19(a).[9] Therefore, I have no occasion to consider whether joinder of Suchard is unfeasible, and if so, whether in equity and good conscience the case may proceed in its absence.

### C. *Forum non Conveniens*

Defendant also moves to dismiss on the ground of *forum non conveniens.*

▄▄▄▄ Dismissal of a case on *forum non conveniens* grounds is discretionary and should only be granted "when trial in the chosen forum would 'establish ... oppressiveness and vexation to a defendant ... out of all proportion to plaintiff's convenience' or when 'the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems.'" *Piper Aircraft v. Reyno,* 454 U.S. 235, 241, 102 S.Ct. 252, 258, 70 L.Ed.2d 419 (1981) (quoting *Koster v. Lumbermens Mut. Cas. Co.,* 330 U.S. 518, 524, 67 S.Ct. 828, 832, 91 L.Ed. 1067 (1947)). The Supreme Court has provided a list of private and public interest factors for district courts to consider in determining the validity of a *forum non conveniens* claim. *See Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508–09, 67 S.Ct. 839, 843,

91 L.Ed. 1055 (1947). The factors pertaining to the litigants' private interests include:

> Relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; ... and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Gilbert,* 330 U.S. at 508, 67 S.Ct. at 843. The public interest factors are:

> The local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper Aircraft* at 241 n. 6, 102 S.Ct. at 258 n. 6 (citing and quoting *Gilbert* at 509, 67 S.Ct. at 843) (internal quotations marks omitted).

▄▄▄▄ Ordinarily, a strong presumption favors a plaintiff's choice of forum; that presumption "may be overcome only when the private and public interest factors clearly point toward trial in an alternative forum." *Piper Aircraft* at 255, 102 S.Ct. at 266. When, as here, the plaintiff is foreign,[10] the presumption operates with less force. However, even in that case, "dismissal for *forum non conveniens* is the exception rather than the rule." *R. Maganlal & Co v. M.G. Chemical Co., Inc.,* 942 F.2d 164, 168 (2d Cir.1991) (citation and internal quotation marks omitted). Therefore, "since a foreign plaintiff's choice of forum is entitled to some weight, a defendant must still show that the balance of convenience sufficiently favors trial in the foreign forum to overcome the presumption in favor of plaintiff's choice." *Id.*

---

**9.** Quite apart from the terms of Rule 19(a), it would be entirely counterintuitive to deem Suchard necessary or indispensable. Assuming Suchard were joined, Royal would have to proceed against the two defendants on conflicting theories of liability. To prevail against Kraft, Royal would have to establish the existence of a principal-agent relationship; to prevail against Suchard, Royal would have to disavow the existence of any such arrangement. Rule 19 cannot reasonably be read to require a plaintiff to contradict itself at trial in such a fashion.

**10.** I assume without deciding that a Marshall Islands corporation with its principal place of business in New Jersey is a "foreign" entity. Formerly a United States Trust Territory, the Marshall Islands gained semi-independence in 1986.

■ Defendant argues that several of three factors listed above warrant a *forum non conveniens* dismissal. Specifically, defendant contends that Russia is a more appropriate and convenient forum because: (1) Russian law governs this action; (2) Russia has the most direct interest in the outcome of this case; and (3) documentary evidence and several key witnesses are located in Russia.

The choice of law issue is the thorniest of the lot, so I consider it first.

■ A federal court sitting in diversity must apply the choice of law rules of the state in which its sits, in this case, New York. New York courts apply what has come to be called the "paramount interest" test in resolving choice of law questions in contract disputes. *See Stillman v. Nickel Odeon, S.A.,* 608 F.Supp. 1050, 1053 (S.D.N.Y.1985). Under this doctrine, "the law of the jurisdiction having the greatest interest in the litigation will be applied." *Intercontinental Planning, Ltd. v. Daystrom, Inc.,* 24 N.Y.2d 372, 300 N.Y.S.2d 817, 825, 248 N.E.2d 576, 582 (1969) (citing and quoting *Miller v. Miller,* 22 N.Y.2d 12, 290 N.Y.S.2d 734, 237 N.E.2d 877 (1968)).

■ Applying this standard, I hold that New York law governs the instant suit. The alleged contract in this case was between Kraft, a Delaware corporation headquartered in Illinois, and Royal, a Marshall Islands corporation headquartered in New Jersey. However, KF International, an unincorporated division of Kraft headquartered in New York, was responsible for handling the Kraft end of the deal. By Kraft's own admission, KF International was responsible for supplying Kraft-branded products to Royal's customers in Eastern Europe. It received Royal's orders from KJS; issued the requisite *pro forma* invoices; accepted payment from Royal; and filled the order. *See* Reply Declaration of Mary Beth Lonegan at ¶¶ 7–9. Presumably, KF International would have assumed these same responsibilities had there been performance of the alleged agreement. Thus, if a contract with Kraft was formed, it was formed with a New York division of that entity, and if a breach occurred, it occurred in New York.

Defendant does not claim that the law of any other state or the Marshall Islands should govern this action. Rather, in defendant's view, since plaintiff has business interests in Russia and the subject of the alleged agreement was destined for resale in Russia, that country has the most substantial interest in this suit and its law should govern. But this dispute is between Kraft and Royal, not Kraft and the Russian customers. Therefore, whatever interest Russia has in this action is secondary, not paramount.

Relative to Russia's, New York's interest in this lawsuit is substantial. As previously discussed, the primary issue in the instant action is whether a corporate entity located within New York's boundaries was bound by the actions of a foreign subsidiary. New York has an interest in having this issue considered under its own laws of agency, since the alleged principal—KF International—is headquartered in New York. In addition, assuming an agency arrangement existed, New York would have an interest in having the contract enforced, since New York was the focal point for performance. But, as the present record indicates, it is questionable whether an exchange of faxes can constitute a valid contract under Russian law. Thus, on this point as well, New York would seek to have its own law applied, so that Royal's contractual rights, enforceable under New York's Statute of Frauds, would be vindicated.

My finding that New York, rather than Russia, has the "paramount interest" in this litigation necessarily leads me to reject defendant's second purported basis for *forum non conveniens* dismissal: that Russia has the most significant stake in the outcome of the case. What is left to consider then, is whether the presence of some documentary evidence and certain witnesses in Russia would justify disturbing Royal's choice of forum. On this score, defendant states:

Clearly, Royal cannot sustain its breach of contract claim without proving the existence of the alleged contract it entered into in Russia. Proof of that contract will require the testimony of Ms. Ladorenko who resides outside the United States. Additionally, Royal cannot prove its claim of

damage to its Russian coffee business without the testamentary and documentary evidence of its Russian customers.

Memorandum of Law in Support of Defendant's Motion to Dismiss at 13. Clearly, if any party is inconvenienced by this forum, it is plaintiff, not defendant. But nothing prevents a plaintiff from burdening itself with an inconvenient forum. The *forum non conveniens* doctrine is simply designed to relieve "oppressiveness and vexation to a defendant," not a plaintiff. *Piper Aircraft* at 241, 102 S.Ct. at 258. To apply the doctrine differently, and disturb a plaintiff's choice of forum based on that party's self-imposed inconvenience would be paternalistic, to say the least. Thus, the third factor cited by defendant in support of its *forum non conveniens* motion, like the other two, does not point toward dismissal.

### III.

For the foregoing reasons, I deny defendant's motion to dismiss under Rule 19(b) and on the ground of *forum non conveniens*, and plaintiff's cross-motion for partial summary judgment.

The parties are directed to appear at 500 Pearl Street, Courtroom 17C for a status conference on May 31, 1996 at 2:00 p.m.

It is SO ORDERED.