**DIRECT ENGERY MARKETING LIMITED, John Lagadin, Ind., and 646885 Alberta, LTD., Canadian Corp., Plaintiffs–Appellants,**

v.

**DUKE/LOUIS DREYFUS, LLC, Duke Energy Corporation, Louis Dreyfus Energy Corporation, and Does, 1–50, Defendants–Appellees.**

Docket No. 01–7834.

United States Court of Appeals, Second Circuit.

Oct. 28, 2002.

Robert A. Goodin, Goodin, Macbride, Squeri, Ritchie & Day, LLP, San Francisco, CA, for Appellants.

John J. Buckley, Jr., Williams & Connolly LLP, Washington, DC, for Appellees.

Present McLAUGHLIN, LEVAL and SOTAMAYOR, Circuit Judges.

### SUMMARY ORDER

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be and it hereby is **AFFIRMED** in part, **VACATED** in part.

Plaintiffs Direct Energy Marketing Limited ("DEML"), a Canadian corporation, and its former shareholders, John Lagadin and 646885 Alberta Ltd., brought this suit in the United States District Court for the District of Connecticut (Eginton, *J.*) against defendants Duke/Louis Dreyfus LLC ("D/LD"), Duke Energy Corporation, Louis Dreyfus Energy Corp. and Does 1–50, asserting liability growing out of the failure of Duke/Louis Dreyfus Canada Ltd. ("D/LD Canada"), a Canadian corporate affiliate of defendants, to consummate the acquisition of the shares of DEML.

In early 1996, defendant D/LD, a power company incorporated in Nevada and headquartered in Wilton, Connecticut, together with affiliates,[1] undertook to explore means of expansion in the Canadian market. D/LD focused on DEML, which was in the business of marketing and selling natural gas in Canada.

D/LD Canada was formed in Canada on May 1, 1996, as the vehicle through which the D/LD interests would acquire DEML. D/LD Canada was jointly owned (on a 50–50 basis) by Duke Canada Ltd. and Louis Dreyfus Canada Inc., themselves Canadian corporations and affiliates of defendants.

On October 1, 1996, the board of directors of D/LD reviewed the terms of the proposed acquisition of DEML and authorized D/LD Canada to proceed with the purchase of DEML's shares for $14.5 million (Canadian). The next day, October 2, 1996, D/LD Canada, as "purchaser," entered into an "Exclusivity Agreement for the Purchase of Shares of Direct Energy Marketing Limited [DEML]" with Lagadin and 646885 Alberta Ltd., as the shareholders of DEML. By this agreement, Lagadin and 646885 Alberta agreed for a limited time not to negotiate with anyone other than D/LD Canada, and "to deal exclusively with [D/LD Canada] in good faith with a view to completing the [sale of their shares]." The agreement attached an Appendix outlining the anticipated terms of the proposed sale for $14.5 million (Canadian), but expressly provided that "the foregoing does not create any legal obligation to enter into the Transaction and the terms contained in Appendix 1 are not binding on any of the parties but are a starting point for negotiation of the Definitive Agreements between the parties."

However, in late October 1996, natural gas prices rose, resulting in an adverse effect on the value of DEML's open positions. D/LD sought a reduction in the purchase price. The two sides met in Wilton, Connecticut in November, but could not agree on terms. D/LD then terminated negotiations.

In August 1997, DEML commenced an action in the Court of Queen's Bench of Alberta, Canada, against D/LD, D/LD Canada, Duke Energy Corporation and Louis Dreyfus Energy Corp., asserting liability based on D/LD Canada's failure to acquire DEML. In order to proceed against the American defendants, DEML applied *ex parte* to a Master in the Canadian provincial court for an order of service in the Canadian courts *ex juris*. Although the order was granted, D/LD successfully challenged it in the Alberta Court of Appeal on the grounds that plaintiff had withheld material information in its submissions to the lower court. On June 15, 1998, the Court of Appeal set aside the order permitting the service of process on D/LD. The court noted that DEML remained free to "sue the American defendants in their home American jurisdictions." The Canadian suit against D/LD Canada is ongoing.

On October 1, 1999, plaintiffs commenced this action. The complaint asserts liability for damages on the basis of breach of contract and of the duty to deal in good faith, and promissory estoppel, arising from D/LD's decision not to go forward with the acquisition of the shares of DEML. The claims of breach of contract and the covenant of good faith are based on the alleged failure to honor the obligations of the Exclusivity Agreement. The promissory estoppel claim is based on the allegation that at a July 12, 1996 meeting, D/LD orally promised plaintiffs that

---

1. The submissions to our court fail to make plain the precise relationship between D/LD on the one hand and Duke Energy Corporation and Louis Dreyfus Energy Corp. on the other.

its affiliate would purchase the DEML shares for $14.5 million (Canadian).

On December 3, 1999, defendants moved to dismiss for failure to join an indispensable party, D/LD Canada. Plaintiffs countered that D/LD Canada was neither necessary nor indispensable because it functioned merely as an agent through which defendants would acquire the DEML shares.

On June 20, 2000, the District Court denied without prejudice the motion to dismiss for failure to join an indispensable party. The court reasoned that "if DLD Canada was acting as the agent of DLD, plaintiffs would be entitled to sue DLD, the principal, without joining DLD Canada the agent." Because the court found the record insufficiently developed to establish whether, in fact, such an agency existed, it denied the motion without prejudice and authorized further discovery.

On November 13, 2000, defendants renewed their motion to dismiss for failure to join an indispensable party. After full briefing and submissions of evidentiary materials, the district court issued an order dated June 13, 2001, converting D/LD's motion to dismiss for lack of an indispensable party into a motion to dismiss for failure to state a claim, and ultimately into a motion for summary judgment. The court granted summary judgment to defendants.

The court found that plaintiffs had failed to establish that D/LD Canada acted as agent for D/LD. On that basis, the court concluded first, that D/LD Canada was indispensable to the lawsuit, and second, that plaintiffs could not establish the liability of the defendants. It granted summary judgment in their favor.

■■■ To the extent that the district court's grant of summary judgment to defendants depended upon its finding of D/LD Canada's indispensability, we believe the district court erred in two re-

spects. First, we can see no reason why D/LD Canada was indispensable to the plaintiffs' effort to establish the liability of the U.S. defendants. As the district court correctly observed in its order of June 20, 2000, if the liability of D/LD depends on whether D/LD Canada acted as its agent, D/LD's liability could be resolved either in the plaintiffs' favor or in the defendants' favor without D/LD Canada being a party to the lawsuit. *See, e.g., Royal Indus. Ltd., v. Kraft Foods, Inc.,* 926 F.Supp. 407, 414–15 (S.D.N.Y.1996) (explaining that the agent is not a necessary party when one sues a principal alleging breach of a contract made by the principal through acts of its agent); *Campbell v. Triangle Corp.,* 56 F.R.D. 480, 482 (E.D.Pa.1972) ("The absence of [D/LD Canada] as a party can in no way impede [defendants] from establishing [their] freedom from liability . . . ."). Thus, the court could grant judgment either to plaintiffs or defendants, depending upon its fact-finding in relation to the question of D/LD Canada's agency role, without any need for D/LD Canada to participate in the lawsuit.

In finding D/LD Canada indispensable, the district court was influenced by a judgment of the United States District Court for the District of Delaware in *Japan Petroleum Co. (Nigeria) v. Ashland Oil, Inc.,* 456 F.Supp. 831 (D.Del.1978). In that case a Nigerian plaintiff sued affiliated United States corporations on the theory that the defendants were liable under a contract made by the defendants' Nigerian subsidiary, as their agent. The Nigerian subsidiary was not joined in the suit. The court found that the Nigerian subsidiary had contracted with the plaintiff on its own behalf and not as agent for the U.S. parents. Accordingly the court concluded that the defendants were not liable to the plaintiff and therefore no adequate judgment could be rendered in plaintiff's favor unless the Nigerian subsidiary was joined

as a defendant. On that basis, the court dismissed the suit for failure to join an indispensable party.

We respectfully disagree with the *Japan Petroleum* court's resolution. If the defendants were not liable, in our view the court should have granted judgment to the defendants. The fact that plaintiff might have been able to establish the liability of another entity not present in the suit (and unable to be joined because its presence would have destroyed diversity) did not make that putative defendant an indispensable party in the existing suit.

Furthermore, even if D/LD Canada had properly been found to be indispensable to the lawsuit, that would not justify granting judgment on the merits to defendants. At most, it would justify dismissing without prejudice, leaving plaintiffs free to renew their suit in another tribunal in which all necessary parties might be joined.

To the extent the judgment was based on plaintiffs' failure to prove that D/LD Canada acted as agent for D/LD, we believe the district court was correct as to plaintiffs' claims for breach of contract and of the implied covenant of good faith. Both of these claims depend on the essential element that D/LD Canada, as agent, bound D/LD contractually to the Exclusivity Agreement. We agree with the district court that plaintiffs failed to present evidence capable of proving that D/LD Canada signed the Exclusivity Agreement as the agent of D/LD.

However, the district court did not consider that the complaint also relied on the theory of promissory estoppel, based on the assertion that D/LD itself made direct promises to the plaintiffs that it would cause the consummation of the acquisition. This claim does not depend on D/LD Canada acting as agent for D/LD. D/LD's asserted liability would grow out of its own actions. Accordingly, the district court's conclusion that D/LD Canada was not acting as agent to D/LD in signing the Exclusivity Agreement does not defeat plaintiffs' allegations with respect to the promissory estoppel claim.

The grant of judgment to defendants with respect to plaintiffs' claim of breach of contract and the covenant of good faith is affirmed. The grant of judgment with respect to the claim that D/LD is liable under a theory of promissory estoppel is vacated and that claim is remanded for further proceedings.